DAVID EMERY WHERRY ET AL., APPELLEES, V. PAWNEE COUNTY, APPELLANT.

FILED FEBRUARY 15, 1911.   No. 16,895.

1. Counties: COUNTY BOARD: POWERS. "A county board or board of county commissioners are clothed not only with the powers expressly conferred upon them by statute, but they also possess such powers as are requisite to enable them to discharge the official duties devolved upon them by law." *Berryman v. Schalander*, 85 Neb. 281.

2. ———: CLAIM FOR TORT: LIMITATIONS. An action upon a claim for a tort or for unliquidated damages may be commenced in a court of competent jurisdiction, or by filing a claim with the county board, at the election of the claimant; and, if the latter course is pursued and the claim is rejected by the board, the claimant

may appeal from the action of the board to the district court, and in such case his action will be deemed to have been commenced upon the date of his filing of his claim with such board.

3. Trial: Action for Damages: Submission of Question of Notice. In an action for damages for negligence in failing to keep a bridge upon the public highway in reasonably safe condition for travel, where the uncontradicted evidence clearly established bot' written and oral notice to the proper county official, prior to the accident, of the unsafe and dangerous condition of such bridge, it is not error for the district court to fail to submit the question of notice to the jury.

4. Appeal: Question of Negligence: Verdict: Review. And in such an action, where the questions of negligence and contributory negligence are both properly submitted to the jury and the verdict of the jury in response thereto is supported by sufficient competent evidence, it will not be disturbed in this court.

APPEAL from the district court for Pawnee county: JOHN B. RAPER, JUDGE. *Affirmed.*

*J. C. Dort,* for appellant.

*F. A. Barton, contra.*

FAWCETT, J.

From a judgment of the district court for Pawnee county in favor of plaintiffs for damages in the loss of a mule by reason of the dangerous condition of a bridge upon a public highway in defendant county, defendant appeals.

The damage complained of was sustained March 3, 1906. On the 28th of the same month plaintiffs filed a claim for damages with the county clerk of defendant county, asking the county board to approve and allow the same. On June 12 the board rejected the claim, and on the 27th of the same month plaintiffs gave notice of appeal and filed an appeal bond with the county clerk. Thereafter plaintiffs filed their petition in the district court. This petition was first assailed by a motion to strike the petition from the files and dismiss the action upon the ground that

the court was without jurisdiction, for the reason that the action sought to be maintained shows that "it is an attempt to appeal from the county commissioners' decision, and the action is not appealable." This motion was overruled and an answer filed, which by leave of court was subsequently withdrawn and a demurrer interposed based upon the same grounds as the motion. The demurrer was overruled, whereupon defendant refiled its answer, in which it again alleged the want of jurisdiction of the court, and that plaintiffs did not commence their action within 30 days of the time of said injury; that more than 30 days had elapsed from the time of the injury before the cause was docketed in the district court; that defendant at the time of the injury had no knowledge or information that the bridge or culvert was defective; that whatever defects existed in the bridge the same were plainly visible to the plaintiffs' agent and were known to him at and before the time the injury complained of occurred; and that any damage or loss sustained by plaintiffs was caused by the gross carelessness and negligence of plaintiffs' agent in crossing over the defective bridge or culvert, "when there was ample room to pass over said bridge or culvert without crossing over the defective part, and in not driving entirely around said culvert or bridge, where the road as traveled by the public plainly and clearly showed the travel was going, and of which the plaintiffs' agent had notice and full knowledge." The reply is a general denial.

The main contention urged is that the action of the plaintiffs is one sounding in tort, and not one arising upon an express or implied contract. It is argued by defendant that "before a claimant for damages, alleged to have been sustained by the negligence, carelessness or wrong-doing of a board of county commissioners, can secure relief, he must first establish his claim, then it would become the duty of the county board to cause a warrant to issue in settlement thereof." By section 22, art. I, ch. 18, Comp. St. 1909, the powers of a county are defined:

"Third. To make all contracts and to do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." Section 23 in defining the powers of county boards provides: "Fifth. To examine and settle all accounts against the county, and all accounts concerning the receipts and expenditures of the county."

*Berryman v. Schalander,* 85 Neb. 281, involved the power of the county board to allow the county attorney, who was a salaried officer, his necessary traveling expenses in going to different parts of the county to attend preliminary examinations of persons charged with criminal offenses. By thus avoiding the large expenditure in sheriff's and witnesses' fees, which would have resulted had such offenders and witnesses been brought to the county seat for such preliminary examination, a considerable sum was saved annually to the county. After quoting with approval from *Lancaster County v. Green,* 54 Neb. 103, we held: "A county board or board of county commissioners are clothed not only with the powers expressly conferred upon them by statute, but they also possess such powers as are requisite to enable them to discharge the official duties devolved upon them by law." In the opinion we said: "Did the board have the power to pay the necessary expenses of the county attorney incurred while prosecuting the business of his office in a manner which was saving to the county large sums of money each year? To hold that it did not have such power would not only be a strained construction of the statute, but would, we think, be against public policy." In like manner we think that to hold that the county board, when a claim for damages, resulting from the county's negligence in not keeping in reasonably safe condition for travel one of its bridges, has been filed with the board and the board is satisfied that the claim is reasonable and just, must decline to pay such claim until it has been established in court, and a large sum for costs added thereto, "would not only be a strained construction of the statute, but would, we think, be against public policy."

*Richardson County v. Hull,* 24 Neb. 536, was an action to recover from the county the sum of $509.43 which had been paid into the county treasury for taxes upon a certain tract of land not subject to assessment. The claim was not filed with the county board, but the action was commenced in the district court. One of the county's contentions was that plaintiff should have presented his claim to the board of county commissioners, and that it could only be brought to the district court by appeal from that board. In the opinion by COBB, J., it is said: "The proposition that 'it is not competent for the board of county commissioners to determine whether the "mistake or wrongful act" contemplated in this section is committed or not' involves the paradox that the county shall not, and cannot, do the very act which the statute plainly declares it shall do, which is absurd; and it involves the further proposition that the county, through its constituted authority, is powerless to act, and cannot act in any such case until it shall be sued in a court of competent jurisdiction and judgment rendered against it, which may be perplexing, inexpedient, and unnecessary. This I do not believe to be the law. The reverse of the conclusions reached by me, in the case at bar, are expressed with much force in the opinion of Chief Justice Dixon in *Stringham v. Board of Supervisors of Winnebago County,* 24 Wis. 594. It is not my purpose to review that opinion, and it is with hesitation that I confess an inability to agree with that decision, especially in an opinion of such an able jurist, and so well characterized by his usual vigor and confidence." After showing the similarity of the Wisconsin statute and subdivision 5 of section 23 of our statute, *supra,* the opinion continues: "The language of either statute seems sufficient to confer the power on the county board to hear and determine the claim or demand of a citizen against the county, of whatever nature, under contract or by tort, especially when the right of appeal is preserved as well to the claimant as to any citizen taxpayer who may feel aggrieved by an adverse decision."

Under the authority of that case, where, it will be seen, the question was carefully considered, the claim in the case under consideration was properly filed with the county board, and the appeal from the adverse ruling of the board conferred upon the district court jurisdiction.

Counsel for defendant cites *Douglas County v. Taylor,* 50 Neb. 535, and that case cites *Nance v. Falls City,* 16 Neb. 85; *Village of Ponca v. Crawford,* 18 Neb. 551; and *Hollingsworth v. Saunders County,* 36 Neb. 141. *Douglas County v. Taylor* was an action by the owner of land abutting upon a public highway, one-half of which was in the city and the other half outside of the limits of the city, for damages occasioned by a cut and fill which the county made and constructed in the highway in front of his property. In the syllabus it is held: "That no legislative enactment was necessary to enable Taylor to maintain his action; that the district court had original jurisdiction to try the claim of Taylor against the county; that it was not a claim required by section 37, art. I, ch. 18, Comp. St., to be filed with the county clerk of said Douglas county and passed upon by its board of commissioners; the word 'claims' in said section 37 has reference only to claims originating in contract, express or implied, between the claimant and the county." This holding of the syllabus would appear to be in conflict with the holding in *Richardson County v. Hull, supra,* but in the opinion, on page 545, it is said: "We think that the word 'claims' in that section refers only to claims originating in contract, express or implied, between the claimant and the county, and that a claim against a county for damages caused to the claimant's property by the county's taking it for public use, or damaging it by the construction of a public improvement, is not such a claim as need be first filed with the county clerk and passed upon by the county authorities; but an action on such a claim may be brought, in the first instance, in any court having jurisdiction of the subject matter." It seems to us that this was what the court in that case meant to decide, viz.,

that it was such a case as "may" be brought, in the first instance, in any court having jurisdiction of the subject matter, and "need not" be first filed with the county clerk. We do not think it was the intention of the court to there decide that first filing the claim with the county board, and then appealing from an adverse ruling of the board to the district court, would not give the district court jurisdiction.

Prior to the decision in *Douglas County v. Taylor*, the court, consisting of the same judges who decided *Richardson County v. Hull*, decided the case of *Nance v. Falls City*, 16 Neb. 85, and in that case followed the decision of the supreme court of Wisconsin in *Bradley v. City of Eau Claire*, 56 Wis. 168; *Ruggles v. City of Fond du Lac*, 53 Wis. 436, and *Kelley v. City of Madison*, 43 Wis. 638, and held that "the word 'claims' in section 80 of the chapter relating to cities of the second class applies alone to those arising upon contract, and not upon tort." In *Village of Ponca v. Crawford*, 18 Neb., 551, another member of the court, as it was composed when *Richardson County v. Hull* was decided, cited *Nance v. Falls City, supra*, without any discussion of the question. When these three eminent judges came to carefully consider the Wisconsin cases again, in *Richardson County v. Hull*, they disapproved all three of the cases cited and followed in *Nance v. Falls City*, and also repudiated *Nance v. Falls City*, and likewise repudiated a similar holding in the last paragraph of the syllabus in *Kaeiser v. Nuckolls County*, 14 Neb. 277. It is subsequently stated, in *Hollingsworth v. Saunders County*, 36 Neb. 141, 146, that the language used in *Richardson County v. Hull* "is merely *obiter dicta*." In that statement we think the learned judge who wrote the opinion was in error, as the decision in *Richardson County v. Hull* turns squarely upon the proposition that the provision in our statute giving a county board power to "settle all accounts against the county, and all accounts concerning the receipts and expenditures of the county," was broad enough to include "the claim or demand of a citizen

against a county, of whatever nature, under contract or by tort." The language there used was not the mere dictum of the writer of the opinion, but was the deliberate conclusion reached by the court after all three of the members of the court, as it then stood, had a second time considered the Wisconsin cases, and had reviewed their former decision in *Nance v. Falls City*, and also after they had decided *Village of Ponca v. Crawford*. We think the conclusion there announced was eminently sound and should have been followed in *Douglas County v. Taylor* and *Hollingsworth v. Saunders County*. (If it were necessary to overrule the last two cases noted, the writer would not hesitate to do so, buttressed as he would be by the sound reasoning in and decision of *Richardson County v. Hull*.) But we think this case can be properly decided and a just rule announced without overruling any of the cases above cited. An examination of those cases will show that it is not held in any of them that an action sounding in tort or for unliquidated damages *must* be commenced in court, and that it *cannot* be instituted by filing a claim with the county board. In *Cass County v. Sarpy County*, 83 Neb. 435, which was an action by one county against the other to compel payment of one-half of the cost of repairs of a bridge over the Platte river between said counties, Cass county filed its claim with Sarpy county, and upon its disallowance appealed to the district court. The provision of the statute is that in such a case the county which has made the repairs may "recover by suit from the county so in default such proportion of the cost of making such repairs as it ought to pay, not exceeding one-half of the full amount so expended." In that case we held that the words "recover by suit," as used in the statute, "include a suit instituted by an appeal from the disallowance of a claim by a county board."

The requirement of the statute (Comp. St. 1909, ch. 78, sec. 117) that, in asserting a claim against a county for damages by reason of a defective bridge, said action

must be commenced within 30 days of the time of the injury, was designed to give the county timely notice of the assertion of the claim, and, if the claimant presents his claim to the county by filing it with the county clerk within 30 days from the time of the accident, it is a sufficient compliance with the statute, and the prosecution of his claim or action is commenced in time; and the fact that the county board retains possession of the claim until after the 30 days have expired, and then acts upon it and rejects it, so that the appeal from the action of the board is not filed in the district court until more than 30 days after the accident, will not operate as a bar to the action.

Upon a careful reconsideration of the question, and of the cases cited, we hold that an action upon a claim for a tort or for unliquidated damages may be commenced in a court of competent jurisdiction, or by filing a claim with the county board, at the election of the claimant; and that, if the latter course is pursued and the claim is rejected by the board, the claimant may appeal from the action of the board to the district court, and in such case his action will be deemed to have been commenced upon the date of the filing of his claim with such board.

It is next contended that the court erred in giving instruction No. 2, requested by plaintiffs. The objection urged against this instruction is that it ignores the question of knowledge or of notice to the county board, either actual or constructive, of the dangerous condition of the bridge. This contention must fail. That the bridge was a public bridge is established without contradiction, and the question of knowledge of or notice to the defendant of its dangerous condition for many months prior to March 3 was not, under the evidence, an open question. The witness Cox testified that he was a rural mail carrier, that his usual route required him to cross that bridge every 24 hours; that the bridge was really dangerous as early as December of the preceding year; that he had given the road overseer of that district both verbal and

written notice of the dangerous condition of the bridge; that he had also complained to the postmaster at Burchard, and that the postmaster had, in his presence, called the attention of Supervisor J. J. Powell to the dangerous condition of the bridge and had requested him to have it repaired. He testified to giving another notice just two days before the accident: "Q. When had you spoken to him before that? A. I spoke to him every time he didn't run away from me when he saw me coming." It would seem from this testimony, which was not contradicated, that actual notice had been repeatedly given to the proper official, and that the failure of defendant to repair the bridge was gross and wanton. Mr. Cox also testified that on the day of the accident the ground on the east side of the bridge in the public road, which seems to have been the only side where teams could turn out, "was very muddy and mirey." This testimony is corroborated by Mr. Shirts, who lived about a half mile from the bridge. He testified that the ground on that day was "very mirey and muddy," and that the dangerous condition of the bridge had existed for six months. We do not think the court erred in not submitting the question of knowledge of the defendant to the jury.

Defendant's next complaint is that the court erred in refusing to give instructions 1 and 8, requested by defendant. This contention is disposed of adversely to defendant by our holding under the first subdivision of this opinion. It is next contended that the evidence clearly shows contributory negligence on the part of plaintiffs' agent in driving across the bridge in its dangerous condition, which must have been apparent to the agent; and it is argued that although plaintiffs' agent might have felt that he could drive his team across the bridge with safety, by reason of the fact that his horses would not come in contact with the hole in the middle of the bridge, the mule, which was being led behind, and which was the animal injured, might be traveling in the middle of the road and be in danger of getting into the hole. By their ver-

dict the jury found that the plaintiffs were not guilty of contributory negligence; and, after having safely relied upon the "mule train" for his hard tack and beans during his four years' service in the civil war, the writer is not willing now to impute negligence to the mule.

Upon careful examination of the entire record, we fail to find any prejudicial error. The judgment of the district court is therefore

AFFIRMED.

LETTON, J., dissenting.

The act under which this action is brought is limited in its scope. Prior to its enactment no liability existed against counties for damages caused by defective bridges. The law created a new right of action and imposed a limitation of time in which an action could be brought to enforce it. The passage of the act had the effect to make counties liable to actions for damages for 30 days after the injuries were caused; but this period terminated the liability if no action had been begun.

In an opinion by Sanborn, C. J., in *Madden v. Lancaster County*, 65 Fed. 188, it is said: "But the proviso in the act that suits shall be brought upon the rights of action it creates within 30 days from the occurring of the injuries, respectively, is a condition qualifying the rights of action, and not a mere limitation of the remedy. *Theroux v. Northern P. R. Co.*, 64 Fed. 84; *The Harrisburg*, 119 U. S. 199; *Pittsburg, C. & St. L. R. Co. v. Hine*, 25 Ohio St. 629." This is the rule of this court. *Bryant v. Dakota County*, 53 Neb. 755; *Swaney v. Gage County*, 64 Neb. 627. In the latter case it is said by BARNES, J.: "A suit based on that act which is commenced more than 30 days after the injuries complained of occurred cannot be maintained." The majority opinion holds that the filing of a claim before the board of county commissioners (a proceeding which we have heretofore held to be unnecessary, *Hollingsworth v. Saunders County*, 36 Neb. 141) complies with the requirement of the statute, and is equivalent to the commencement of an action. The words

36

of the statute in this connection are: "The person sustaining the damage may recover in a *case* against the county, * * * the *action* can be brought, * * * *damages* and *costs* shall be paid * * * provided, however,. that such *action* is commenced within thirty (30) days of the time of said injury or damage occurring." Comp. St., 1909, ch. 78, sec. 117. It is clear that the "case" or "action" spoken of in the statute is one in which a judgment for "damages and costs" can be rendered, and that the language imports a proceeding in a court of justice. It is unnecessary to set forth at length the numerous definitions of the words "action" and "case" to be found in standard dictionaries and in legal opinions. In Webster's New International Dictionary an "action" is defined as "a legal proceeding by which one demands or enforces one's right in a court of justice; a judicial proceeding for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense; usually distinguished from *special proceeding.*" And Judge Story defines a "case" as "a suit in law or equity, instituted according to the regular course of judicial proceedings." 2 Story, Constitution (5th ed.) sec. 1646. The definition of these words in 1 Words and Phrases, p. 129, expresses these identical ideas in varied phraseology.

I can find no authority anywhere to sustain the proposition that the needless filing of a claim in a matter where an adverse decision could have no finality as to the right of the claimant against the county is the beginning of an action. The legislature granted the relief upon the condition that an "action" should be begun within 30 days, and I think this court has no right to say that the word action in this statute has other than its ordinary meaning.

In my judgment the petition does not state a cause of action. This was the view taken by the federal court in *Madden v. Lancaster County, supra,* and by this court in the cases cited.

I think the judgment of the district court should be reversed and the cause dismissed.