CHARLES BOSCHULTE, APPELLANT, v. ELKHORN RIVER DRAINAGE DISTRICT, APPELLEE.

FILED MAY 4, 1918. No. 19946.

1. **Drains:** DAMAGES. One who sells and conveys to a drainage district right of way through land owned by him, and releases the district from all claim for damages by reason of occupancy and use of the land so conveyed, may recover damages caused by carelessness and negligence in the construction of the improvement. Such release relates only to damages caused by proper construction of the improvement.

2. **Mandatory Injunction:** DRAINAGE IMPROVEMENT. In an action for damages caused by negligence in the construction of such an improvement, a mandatory injunction requiring radical and continual changes in the plan of construction of the improvement will not be granted without clear proof of the necessity and practicability of such changes.

3. **Appeal:** TRIAL TO COURT: FINDING. If a jury is waived in such action, the findings of the trial court, as to questions of negligence in the construction of the improvement and damages caused thereby, are entitled to the same consideration upon appeal as the findings of a jury upon such questions.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*W. M. Cain* and *N. H. Mapes,* for appellant.

*Courtright, Sidner & Lee,* contra.

SEDGWICK, J.,

The plaintiff brought this action in the district court for Dodge county for an injunction and to recover damages alleged to have been caused by the construction of the defendant's drainage ditch. The case was tried to the court without a jury, and the court denied the injunction, but found that the plaintiff's damage was $300, for which judgment was entered, and the plaintiff, not satisfied with these findings and this judgment, appealed to this court.

It appears that the Elkhorn river flows through Dodge and Washington counties, and when the defendant drainage district was about to construct its ditch in 1909 its plans contemplated the excavation of several considerable cuts with a view to straightening the course of the river. Pursuant to this plan, it purchased from the plaintiff a right of way across part of his land, and plaintiff executed to the defendant his deed conveying a strip of land 200 feet wide across certain lands of the plaintiff, amounting to about nine acres, for which the defendant paid the plaintiff the sum of $900, being about $100 an acre for the land so purchased. The deed contained the stipulation that "said land is to be used perpetually according to the present or future plans of said drainage district, its successors and assigns for drainage purposes." It is conceded that the plans for the construction of the ditch through the land so purchased had been made and were accessible to the parties at the time of entering into the contract to purchase the right of way, and that these plans contemplated that this excavation would not be made of sufficient width to carry the whole flow of the river; that the then existing course of the river should not be interfered with; and that reliance was to be placed upon the probability that the water of the river finding a more direct channel through this ditch would, by erosion, enlarge the ditch, and perhaps finally furnish a sufficient channel for the whole stream. But the plaintiff alleges "that defendant was careless and negligent in the construction of said ditch, in that defendant made the same too narrow and too shallow and insufficient to receive, take and carry the waters of said Elkhorn river; that defendant negligently and without due care made said ditch of a width of less than forty (40) feet on top and only about ten (10) feet wide at the bottom." It seems to be conceded that the Elkhorn river, for some distance both above and below this land in question, is a very crooked stream and subject to excessive flood

waters at various times, and by erosion has frequently changed its channel at various places. In crossing the plaintiff's land the channel of the river was very crooked; it appeared to both parties very desirable to have its course straightened; and the deed provides that the grantor will "release all damages and claims thereto on account of and by reason of the occupancy and use of said land." What the result would be was more or less of an experiment, but the parties to the deed appear to have anticipated beneficial results. This release of damages, of course, was predicated upon the assumption that the work would be properly done in reasonable compliance with the plans and specifications, and the defendant would be liable for any damage caused by its negligence in the construction of the work.

An injunction was asked for "commanding, requiring and enjoining defendant to construct riprap work or some other suitable work upon and along the east bank of said Elkhorn river where same passes through plaintiff's said land, and to prevent further encroachments of said river upon said land, and perpetually enjoining and requiring defendant to maintain the same." The trial judge, with the parties interested, viewed the work complained of and the land affected. The court refused the injunction, and "finds the district has not committed any negligence," but allowed the plaintiff compensation for the land actually occupied by the river bed, in addition to the 200 feet conveyed in the deed. There is no doubt that a large tract of the plaintiff's land was overflowed, and it may be that this injury to the plaintiff's land was increased, at least temporarily, by the improvement undertaken. The evidence is very voluminous, mostly relating to the injury to the land, and with some attempt to show that this injury was at least in part caused by carelessness of the defendant district. The trial judge appears to have given unusual care in the investigation and determination of the questions presented. The question as

to these alleged damages is essentially a question of fact, and, under the circumstances, the findings of the trial court in that regard are entitled to the same consideration as the findings of a jury upon such questions. Upon the whole record, we cannot say that the findings as to these damages are so clearly wrong as to require this court to interfere.

The judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed October 18, 1918. *Rehearing denied.*

SEDGWICK, J.,

The brief on the motion for rehearing suggests that the quotation in the opinion, *ante* p. 451, from the finding of the district court, "finds the district has not committed any negligence," is misleading because it does not quote the remainder of the finding, "but in so far as it made the river its agent to make the excavation and thereby excavated 350 feet in width, it was either negligence or the equivalent of negligence." It seems to us that the positive finding is that the district was not guilty of negligence, but making the river its agent, and so forth, was in law equivalent to negligence; that is, the law will hold the district liable the same as it would if it had been guilty of negligence. This conclusion of law by the trial court we think is not justifiable under the circumstances.

"In crossing the plaintiff's land the channel of the river was very crooked." It would therefore naturally appear "to both parties very desirable to have its course straightened." No evidence that it so appeared is required.

The contract between the parties was made in view of the plans on file for the construction of this ditch, which plainly contemplated "that this excavation would not be made of sufficient width to carry the whole flow of the river; that the then existing course of the river

should not be interfered with; and that reliance was to be placed upon the probability that the water of the river finding a more direct channel through this ditch would, by erosion, enlarge the ditch, and perhaps finally furnish a sufficient channel for the whole strean.." Thus it was agreed that the river should be made "the agent to make the excavation," not of one party, but the agent of both parties. It was not supposed that in so doing the river would overflow the plaintiff's land not included in the purchase, and the contract contained no agreement that either party should guarantee the other that the river would not overflow its banks. If more of plaintiff's lands were covered with water by such overflow than was or might be released by reclaiming the land covered by the former crooked course of the river, the plaintiff may have lost instead of gaining by his venture.

There is no contention that the contract was fraudulent or in any wise unfair, nor even that the plaintiff will not, on the whole, recover more land than he will lose.

The defendant has not appealed from the judgment of $300, and it is, therefore, not necessary to determine whether it was erroneous.

The motion for rehearing is    OVERRULED.