RICHARDSON COUNTY, APPELLANT, V. DRAINAGE DISTRICT
No. 1, RICHARDSON COUNTY, APPELLEE AND
CROSS-APPELLANT:
HENRY C. ZOELLER ET AL., CROSS-APPELLEES.

FILED JUNE 12, 1925. No. 24305.

1. **Drains: REPAIR.** The right of the supervisors to keep a ditch in repair is not limited to making good its defects in the precise place of its original construction, when the nature of the soil and the general topography do not admit of successful operation there, but it includes the right to make the ditch effective to the use for which the license to construct the same was granted, and hence to straighten its channel or to lengthen and better its outlet.

2. ———: **ASSESSMENTS: INJUNCTION.** While injunction may be had to prevent the collection of assessments because the proceedings to levy such assessments are void, it is nevertheless well settled in this state that the determination of the board levying drainage assessments cannot be successfully assailed by injunction for less cause, particularly when an adequate remedy exists by *quo warranto* or other action at law.

3. ———: ———: **INDIAN LANDS.** *Held,* that the statute relating to tribal lands of Indians, though intended to prevent a greater levy than $7 an acre for drainage reclamation purposes so long as the title to said lands remained in the government, was not intended to prevent future taxes and impositions upon said lands after the same had been patented to the Indians without restriction as to sale and incumbrance; and *held* that, while the first or initial assessment upon the Indian lands in this case was settled by a payment of not more than $7 an acre, in

accordance with said statute, the district was not precluded from levying subsequent assessments upon said lands after they had been duly patented, the total of all assessments not exceeding the benefits to the lands.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed in part, and reversed in part.*

*F. N. Prout* and *P. B. Weaver,* for appellants.

*John Wiltse, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD and THOMPSON, JJ., and SHEPHERD, District Judge.

SHEPHERD, District Judge.

The thing in controversy is a fourth supplemental assessment for a contemplated improvement to Drainage District No. 1, of Richardson county, Nebraska. The ditch is under the drainage act, sections 1744-1812, Comp. St. 1922. The county was assessed $2,396.61 for its roads lying within the district, and other owners proportionately for their lands situate therein.

At the meeting of the supervisors of the district to hear complaints, the county objected that the proposed improvement was not a repair or improvement at all, but a new ditch, and wholly unauthorized; also, that the proposed assessment was in excess of benefits, and accordingly void. It made other objections which will be considered later. Its objections being overruled by the board, it appealed to the district court, where a demurrer was sustained, and the case dismissed. The board thereupon filed a claim with the county commissioners or supervisors for the first instalment of the assessment; the claim was rejected; the board appealed to the district court; and the county brought this suit for an injunction to prevent the enforcement of the assessment, its contention being that the same was absolutely void. Issue was joined and trial was had. The court's finding was in favor of the district and against the county, except that the district was permanently enjoined from

assessing the land of two or more interveners, on the theory that such lands were Indian lands, and subject only to such assessment as had been theretofore made and collected. Both parties appealed, and the case is here upon the appeal of the county and the cross-appeal of the district.

There seems to be no merit in the contention of the county that the assessment levied was in excess of benefits. The record amply sustains the answer of the district on this point. The benefits to county highways were originally found to be $77,349. The first assessment was $18,600 and three subsequent supplemental assessments totaled $14,-772.20. Adding the assessment in question, $2,396.61, the whole amounts to less than 50 per cent. of the benefits. *Drainage District No. 1 v. Richardson County*, 86 Neb. 355, does not pretend to state the total benefit to the public highways within the district, but deals only with the original assessment made. The power to lay the special tax was the matter considered in that case. As pointed out by the appellee in his brief, the original report of the engineer and the finding of the board thereon fixed the benefits to the county roads at $77,349.

It is equally clear, and here the above cited case accords with the record of the proceedings of the board of supervisors, that the notice required by the drainage act was duly given, and that opportunity to make objections was afforded in full compliance with the law. The record also affirmatively shows that the county appeared and objected to the fixing of the total benefits at the sum named, as well as to the fixing of the initial assessment at $18,600. Nor can the county contend with good grace to the contrary, when it is considered that it submitted to, and paid, the first three supplemental assessments amounting to $14,772.20.

We come, therefore, to the improvement for which this fourth supplemental assessment was made, the digging of two miles of straight ditch to connect with the Nemaha river below a series of bends which tended to retard the flow of the stream. It seems that by original construction

the old ditch had followed the lower course of Muddy creek to the Nemaha at a point above these bends, and that its waters, greatly augumented by those of three other ditches belonging to drainage districts more recently organized, had carried silt to the river in such quantity as to almost half fill its channel, thus preventing proper drainage and resulting in the frequent flooding of adjacent lands of the district. This condition affected every owner in the district, much as a loss of function in the human body affects the whole man, and became a matter of moment to all. The first move of the board of supervisors was to invite the other districts mentioned to cooperate in cleaning out the channel of the Nemaha. But it received no response from that quarter. Wherefore it found itself confronted with the alternative of doing such cleaning on its own account at an outlay of upwards of $70,000, or digging a new outlet at a cost of about $35,000. It chose the latter, not only because of its lesser cost, but because it judged that a cleaning out of the old ditch and channel would afford only temporary relief, while the new outlet, with its straight course, promised to scour and to improve in width and depth as time went on, thereby permanently furnishing the drainage desired.

But the question is, was it within the power of the board to so decide? Obviously the board's authority in the premises was only what the statute conferred. The portion of the statute upon which the district depends is found in section 1806, Comp. St. 1922, which provides that, if a ditch of this kind shall become "out of repair, obstructed, inefficient, or defective," the board of supervisors may order an assessment for the purpose of placing the same in proper condition, using the original assessment upon the property of the district as a basis for so doing; and that the assessment made by them shall be limited to the amount necessary to make such repairs, remove the obstruction, or remedy the defect, etc. And the district declares that this is sufficient to give it warrant to dig the new ditch, particularly when it is considered in connection with section 1794, Comp. St. 1922, providing:

"In order to effect the drainage of the district, the board is authorized to clean out and remove all obstructions from the bed of any stream, creek, bayou, lagoon, or other water-course in the district; to straighten or shorten and deepen or widen the course of any stream or to abandon the bed of any stream and construct a new channel therefor, and to fill up any channel, or part of a channel of any stream, creek, bayou, or other water-course in order to turn the direction of the volume of water or to concentrate the water so as to deepen and form a main channel."

It would seem that the statute should be construed liberally for the purpose of giving effect to the intent of the legislature, which undoubtedly was to make the drainage contemplated by the act effective. The supervisors of the district were convinced by the advice of their engineer and by their experience that, if they cleaned out the old ditch and the channel of the Nemaha, the work would not only cost a great deal more than a new outlet, but would have to be done over and over because the condition would recur again and again. They concluded that the new ditch would be a proper remedy for the inefficiency and defectiveness of the old, and no more, in substance, than a repair of the same.

The court is of opinion that this was a reasonable conclusion on the part of the supervisors. We so hold, and that the action of the board was entirely within its power. The right of the supervisors to keep the ditch in repair is not limited to making good its defects in the precise place of its original construction, when the nature of the soil and the general topography do not admit of successful operation there, but it includes the right to make the ditch effective to the use for which the license to construct the same was granted, and hence to straighten its channel or to lengthen and better its outlet.

Possibly the plaintiff may be right in its contention that the seat of the difficulty is at the railroad bridge, though we do not think so from our examination of the record. But suppose that such were the case. Upon appeal and in a direct

proceeding it might become the duty of the court to decide the engineering question and give relief. But in this collateral suit for injunction such a question cannot be decided. The only ground upon which we may rightfully grant the relief demanded is that the proposed improvement is beyond the proper limits of a repair. Unless it be of the latter character, we must consider it as for the board to decide, and decline to interfere with the reasonable discretion of that tribunal. While injunction may be had to prevent the collection of assessments because the proceedings to levy such assessments are void, it is nevertheless well settled in this state that the determination of the board levying drainage assessments cannot be successfully assailed by injunction for less cause, particularly when an adequate remedy exists by *quo warranto* or other action at law. *Omaha & N. P. R. Co. v. Sarpy County*, 82 Neb. 140; *Toner v. McCarter*, 58 Ind. App. 682; *Nebraska Telephone Co. v. Cornell*, 58 Neb. 823.

That the cutting of the new outlet is in the nature of an improvement or repair contemplated by the statute is borne out by decided cases in other jurisdictions, notably *Yeomans v. Riddle*, 84 Ia. 147, in which the court used the following illuminating language: "It is made a ground of complaint * * * that a large part of the work was done when the board of supervisors had not established or located a ditch. The repair of a ditch may involve work to be done elsewhere than in or at it. Embankments or walls may be required, and material therefor may be obtained away from the ditch, or a new channel to straighten the old one may be made, and the like, which are rendered necessary by the action of floods or by other causes. The ditch is not expected to excel all the works of man by being perfect from the beginning." In extension of its remarks upon the point in question it was held: "It being necessary, in order to deepen a ditch, that a new outlet be found, and that this be extended into another county, the supervisors have authority to do so." (80 N. W. 886.)

Other cases furnishing support to this view are *Bomsta*

*v. Nelson,* 137 Minn. 165; *Simpson v. Board of Supervisors,* 186 Ia. 1034. True, if the new ditch were an independent ditch, it would be beyond the power of the board to construct it, as indicated by *Smith v. Monona-Harrison Drainage District,* 178 Ia. 823. But, as we have seen, this is not the case here.

In the course of constructing the original ditch, litigation arose between the plaintiff and the Chicago, Burlington & Quincy and Missouri Pacific Railroad Companies over the assessments imposed upon said companies; and in the course of such litigation, a portion of which had been brought to this court, or was on the way to this court, a settlement was made by which said companies paid a certain sum and were relieved from any further liability in connection with the project, and were guaranteed against any further assessments to be made against them in that behalf. This is assigned as ground upon which the plaintiff should be relieved from payment of the assessment in question, and should have the injunction prayed for. One answer to this, and a very reasonable one, is that the supervisors acted wisely and well, and in due exercise of their legal authority, in making said settlement. Another is, somewhat to the contrary, that under the law the railroad companies could not be relieved by such an agreement, their liability being imposed by the statute and unavoidable. But however this may be, whether the settlement was legal and binding or not, we perceive no reason why a defense upon the part of the county can be predicated upon it. If the action of the supervisors was without power and if the settlement was illegal and of no force, it may be set aside by the county, or by any person particularly interested, in an appropriate proceeding. If the settlement was legal and binding, the county or such interested person may have remedy by a like proceeding. This suit is for injunction, and injunction is not the proper action by which to obtain such relief. If the county may on such grounds prevent the supervisors from repairing and improving by constructing the proposed ditch at an expense of $35,000, it

may also prevent it from repairing and improving by dredg-
ing out the old ditch and the old channel at an expense of
$70,000.   In other words, it may tie the hands of the super-
visors and destroy the whole project.   No, the plaintiff can
prevail in this case only upon the ground that the work
contemplated is not authorized by statute at all, and that
the proceeding of the supervisors in that behalf was and
is void.   And this we determine, as the district court de-
termined, adversely to plaintiff.

The proposed assessment is levied ratably against the
lands of the interveners Henry C. Zoeller and Herbert
Zoeller, which lands lie within the district and are benefited
by the improvement.   And the record shows that this
fourth supplemental assessment, added to what has hereto-
fore been paid for and on account of such lands, does not
exceed the benefits.   When the original ditch was con-
structed these lands were Indian lands and were not pat-
ented, and, by a United States statute, only a maximum
charge of $7 an acre could then be made against such lands.
This sum was less per acre than the original assessment
levied, but it was received in full of such assessment.

It is contended by the said interveners, however, that
such payment was received in full of all assessments made,
or to be made, in connection with such project; that such
was the specific agreement between the supervisors of the
district and the Indian agent or commissioner who acted in
behalf of the Indians, and that such was the force of the
federal statute.

Sections 4 and 5 of the federal act in question are as
follows:

"Section 4.   That the said drainage district be, and it is
hereby, authorized to assess the cost of reclaiming the
tribal lands of the Sac and Fox Indians, and all lands al-
lotted to the Indians in severalty and held by patents con-
taining restrictions as to sale, taxation, and alienation
within said district, and to condemn any of said lands,
necessary for the purpose of reclamation, in the same man-
ner as said district may condemn other lands.   Provided,

that the payments to be made on the taking of lands under the provisions of this section shall be subject to the approval of the secretary of the interior.

"Section 5. That the secretary of the interior be, and he is hereby, authorized, in his discretion, upon application, to issue a fee simple patent to any Indian for the lands allotted to him within said drainage district, and the issuance of such patent shall operate as a removal of all restrictions as to the sale, incumbrance, or taxation of the lands covered thereby." 34 U. S. St. at Large, ch. 3298, p. 263.

But it is plain from the foregoing quotation that the statute makes a distinction between the lands as held by the government for the Indian and the lands after they are patented. These are the significant words: "And the issuance of such patent shall operate as a removal of all restrictions as to the sale, incumbrance, or taxation of the lands covered thereby." Clearly the intention of congress was to give the Indian this particular protection while his property was held by his guardian, the government, and only during that time. Being patented to him, his land became as government lands patented to the whites, and, after a careful examination of the record, we are all of the opinion that the release given by the supervisors was no more than a settlement of the district's demand upon its initial assessment. It follows, therefore, that the finding of the district court upon this point must be held to be incorrect, and that the lands of the interveners should be adjudged to be chargeable with the fourth supplemental assessment made by the board.

It further appears that the said interveners did not pursue their remedy in the direct proceeding; that is to say, they did not file objections before the board of supervisors and go to the district court by appeal or error. Had there been ground for a successful contention on their part, a remedy at law would have been thus available to them. Nor does it appear that they paid to the county treasurer the amount due upon the first call upon the fourth supple-

mental assessment, as provided by section 1810, Comp. St. 1922. A drainage district may make assessments against lands within the district from time to time so long as such assessments do not exceed total benefits. *Hanscom v. City of Omaha*, 11 Neb. 37. The collection of assessments is not to be enjoined until the party complaining shall first pay to the county treasurer the amount of his assessment. Section 1810, Comp. St. 1922. An injunction will not lie where there is an adequate remedy at law. *Nebraska Telephone Co. v. Cornell*, 58 Neb. 823.

Deciding, as we have, that the trial court was without error in finding and holding against the county, and in refusing it an injunction against the defendant, the decree of said trial court is affirmed in this regard. And, finding as we do, that the trial court was in error in holding that the lands of the interveners were not subject to the fourth supplemental assessment, and that the district should be enjoined from attempting to collect the same, the decree of said court in that regard must be, and is, reversed and the cause is remanded to the district court, with instructions to enter an order setting aside said order of injunction and dismissing the case of said interveners.

AFFIRMED IN PART, AND REVERSED IN PART.

Note—See Drains, 19 C. J. secs. 191, 262.