IDLEWILD FARM COMPANY, APPELLEE, v. ELKHORN RIVER DRAINAGE DISTRICT, APPELLANT.

FILED DECEMBER 30, 1925.   No. 23421.

1. **Drains:** DAMAGES. One who sells and conveys to a drainage district a right of way through land owned by him cannot recover for damages to his lands which are occasioned by negligent installation of construction and diversion works installed where and as he in express terms directed, and where he paid a substantial part of the expenses and at the time assumed responsibility for such damage as might thereafter be thereby caused to lands owned by him.

2. **Estoppel** is a means of repose, promotes fair dealing, and cannot be made an instrument of wrong or oppression. Like the statute of limitations, it is a conservator. *Daniels v. Tearney,* 102 U. S. 415.

APPEAL from the district court for Dodge county: LEONARD W. COLBY, JUDGE. *Reversed.*

*Courtright, Sidner, Lee & Gunderson* and *J. C. Cook,* for appellant.

*Jacob Fawcett* and *Abbott, Rohn & Dunlap, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

Plaintiff sued in Dodge county to recover damages for injury to its farm lands which, it is alleged, arose from defendant's negligence in the installation of drainage construction and diversion works on the banks of the Elkhorn river on and adjacent to a part of that portion of plaintiff's lands through which the river then flowed. In its natural course the Elkhorn river is a whirling, winding stream and has many abrupt bends; and the works here in question were installed with the view, in part at least, of materially shortening the river by causing it to flow through a newly formed and substantially straight channel and thereby prevent erosion and damaging overflow. In putting this project into practical effect the river, where it flowed through a part of plaintiff's lands in the form of a succession of damaging loops, was diverted into the new-made channel, which is designated as "cut-off E" in the record. By this channel the river was caused, eventually, to flow through the lands of others, whose lands joined that of plaintiff's on the south, but they are not parties to this suit. The case was tried to the court without a jury. Plaintiff recovered judgment for $15,150 and defendant has appealed.

Some time before this action was begun R. B. Schneider was the owner of 1,400 acres of land in the Elkhorn river valley and it bordered, in part, on the river of that name near the city of Fremont. Subsequently he and his wife and three daughters formed a corporation, and it took over the ownership of the 1,400 acres. The four Schneiders were the only stockholders. They named the corporation "Idlewild Farm Company." Schneider became the president and general manager of the Idlewild. He owned no other land in the drainage district, nor was he an officer or stockholder of any corporation except the Idlewild which owned land therein.

About the year 1909, the exact date being immaterial, the Elkhorn River Drainage District was organized and Schneider became a stockholder and a member of its board of directors and was elected its first president. He retained his place in the directorate of the drainage district, and also its presidency, and he also retained his office as president and general manager of the plaintiff corporation until 1913 when he died. So that, as disclosed by the record, he became, and was, an active participant in all of the activities and in the management and control of both corporations so far as material here. It may here be observed that upon the death of Mr. Schneider all of the Idlewild stock became the property of his widow and his three daughters and thereafter the farm was carried on under their supervision.

The substance of plaintiff's contention is that the proximate cause of the alleged damage to its lands, by erosion, flooding and the like, was defendant's negligent installation of the drainage and construction works complained of.

The record is very voluminous and it is impractical to reproduce here much of the evidence. It fairly appears, however, from the evidence of many practically uncontradicted witnesses that Schneider not only favored the installation of all of the materially important construction works, of which the Idlewild now complains, but in fact it appears therefrom that the work was done at and because of Schneider's apparently urgent request and as and where he wished to have it installed. It appears, too, that plaintiff, aside from the defendant district, by Schneider, its president, alone made substantial contributions to the expense of such changes of installation as are hereinafter referred to.

Joseph Roberts, a long-time resident of Dodge county, was a member of defendant's board of trustees and its president when the case was tried, and formerly for several years during the formative period of the drainage district he was a member of the county board of supervisors and in both official capacities had much to do with practically all of the installation of the construction works which are

here in question. He was secretary of the district when its plans and specifications were adopted. The substance of Roberts' evidence is that a certain river cut-off, which is marked "abandoned" on a map in evidence, was so abandoned at Mr. Schneider's request, and "cut-off E" was, by his request and on his insistence, substituted in its place. Some of the board of directors opposed the change when the following colloquy took place. "Q. State what Mr. Schneider said to the board with reference to that change. A. Well, there was some objections made to it, to the making of this change, and Mr. Schneider said: 'As long as I am willing to assume the responsibility of making this change, and it effects no other land or any other party but the Idlewild land, why do the board object to making the change? Why should they object?'" And the evidence is that the change was accordingly made. The same witness also testified that, at Schneider's request, certain rock work was installed, and that only the Idlewild company, by its president, contributed part of the necessary labor and expense. On this point he further testified: "Q. Under whose direction and supervision was that work put in—that rock work? A. Mr. Schneider's. Mr. Schneider contributed a part of the labor to put that in. * * * Then there was deducted thirty cents a foot from his (Mahar's) contract for brush and trees that Mr. Schneider furnished. Q. You mean the Idlewild company? A. Yes. Q. That is shown by the contract? A. Yes."

And in respect of a certain dike that was used in the construction work this is shown by the evidence of witness Roberts: "Mr. Schneider stated that, if we would spend a certain amount of money to put the dike in where he requested it, he would add a certain amount, and on that proposition we consented to putting in the dike where it was put in finally. Q. That was at the last meeting? A. Yes. Q. What, if anything, did he say at the first meeting as to why he wanted it located where he did want it located? A. He wanted it as a crossing to go over the land across the old river bed." And it appears that Schneider

also said: "If you put it (the dike) where I want it, I will assume all responsibility of any danger in the future. * * * Q. What, if anything, did Mr. Schneider say at that second meeting with reference to contributing $100 toward the expense? A. Yes. Q. Did he say that? A. Yes. Q. And what did he say about the future maintenance of it, if anything? A. He said he would take care of it in the future. * * * The Court: At this time, was the cut-off made in the river? A. Yes. Q. And the water was running from the river into the cut-off largely? A. Yes, sir."

It seems that Roberts and Schneider and others officially connected with the defendant floated through the cuts in small boats for the purpose of making observations, and that "Mr. Schneider remarked that he was very much gratified the way the river had changed and gone into the different cuts, and especially in cut-off E," the latter being the new and straightened channel which, from all appearances, was intended to divert practically all of the excess flowage of the Elkhorn river away from plaintiff's 1,400 acre tract.

E. C. Diers, I. M. Williams, C. B. Nicodemus, B. W. Reynolds, and J. A. Yeager, also trustees, testified on the part of defendant, and they corroborated the evidence of Mr. Roberts, which had to do with the material facts involved in this suit, in every essential particular, and in respect of the damage to the Idlewild farm several of these witnesses, and at least one other, testified that no material damage was occasioned as claimed by plaintiff.

Plaintiff's deed of conveyance of the right of way of the land necessary for the ditch in question, as urged by it, provides that the land so conveyed "is to be used perpetually according to the present or future plans of said drainage district, its successors and assigns, for drainage purposes." And the deed also contains this: *"In consideration aforesaid the said first parties* their heirs and assigns waive all claim to the construction by said drainage district of any bridge and *hereby release all damages and claims thereto on account of and by reason of* the occupancy and use of

said land." The same language, in part, was construed by us in *Boschulte v. Elkhorn Drainage District*, 102 Neb. 451, on rehearing 454, on which plaintiff relies. We do not think the *Boschulte* case is in point, because it is not made to appear therein that the installation and construction there complained of were in any manner influenced or controlled or paid for in part by Boschulte, the complaining party, nor does it appear that he had any official relationship to the defendant drainage district. And he assumed no responsibility for subsequent damages.

In view of the record, we think the fact is established that the changes here were made upon the request and insistence of Mr. Schneider, not only as president and manager of the Idlewild, but as president and member of the board of directors of the defendant corporation as well. Certain it is that Schneider made no protest against any part of the proposed construction so far as this record discloses.

Should defendant be holden for damages arising from the installation of the works complained of in view of the proved fact of Schneider's urgency that it be installed pursuant to his insistent views, and in view of the evidence generally? We do not think so. And this in part because of Schneider's official and managerial relationship to the plaintiff, the owner of Idlewild, as its president and general manager. And it seems to us material in this inquiry to observe that the record shows Mr. Schneider to have been a strong, purposeful and dominant character, and that apparently he controlled and practically compelled, by his persuasive manner, the material action of the defendant district in respect of the installation and construction facts here complained of.

Plaintiff in its argument seems to lose sight of the activity of the Idlewild's president in procuring the installation of the drainage works, and of its substantial contribution to the necessary expenses and the assumption of the risk which might thereby be occasioned to the Idlewild lands. But, neither in reason nor in law does it seem to us

that its argument finds support.

It has been held that, in an action for the diversion of water by the building and maintenance of a dam by defendants, where it appears that plaintiff assisted in maintaining the dam and diverting the water, he cannot recover, and that such participation in such diversion need not be specially pleaded, but may be proved under an issue raised by defendant's denial that plaintiff was injured by the diversion of the water. *Churchill v. Baumann,* 95 Cal. 541. The act of the president of the Idlewild was the act of the Idlewild. *Howells State Bank v. Estate of Muller,* 113 Neb. 177. It has been held that one who is apprised of the proceedings of a drain commissioner in relocating a ditch and who dug the ditch cannot attack such proceedings. *People v. Drain Commissioner,* 40 Mich. 745. The mayor of a city, as mayor, directed the building of sidewalks and the like, and it was held that he could not be heard to deny that such streets are public streets. *Ritchie v. City of South Topeka,* 38 Kan. 368. And it has been held that, where a person authorizes the removal of dirt from a street in front of his land, he cannot be heard to complain of such removal. *Wheat v. Van Tine,* 149 Mich. 314. A party cannot take advantage of an action in which he has acquiesced for his own benefit. 2 Herman, Estoppel, sec. 995. "He is said to be willing who either expressly consents or tacitly makes no opposition. He who consents cannot receive injury." Black's Law Dictionary, p. 1212. Judge Cooley in his work on torts announced this rule:

"Consent is generally a full and perfect shield when that is complained of as a civil injury which was consented to. A man cannot complain of a nuisance, the erection of which he concurred in or countenanced. He is not injured by a negligence which is partly chargeable to his own fault." 1 Cooley, Torts (3d ed.) sec. 187.

In *Daniels v. Tearney,* 102 U. S. 415, 420, Mr. Justice Swayne said:

"The principle of estoppel * * * has its foundation in a wise and salutary policy. It is a means of repose. It

Idlewild Farm Co. v. Elkhorn River Drainage District.

promotes fair dealing.   It cannot be made an instrument of wrong or oppression, and it often gives triumph to right and justice, where nothing else known to our jurisprudence can, by its operation, secure those ends.   Like the statute of limitations, it is a conservator, and without it society could not well go on."

Our conclusion, based on the weight of evidence, and derived from the authorities, is that one who sells and conveys to a drainage district a right of way through land owned by him cannot recover for damages to his lands which are occasioned by negligent installation of construction and diversion works installed where and as the vendor directed, and for which he paid, in substantial part, and where he at the time assumed responsibility for such damage as might thereafter be caused thereby to lands owned by him.   Plaintiff, in a word, actively and effectively participated in the doing of the things of which it now complains.   It may be added that the record seems fairly to disclose that the material evidence of the defendant drainage district stands practically uncontradicted, while that of plaintiff in opposition thereto is almost negligible; and in some material respects it corroborates defendant's evidence.

The defendant district made an offer to prove by three or four of the members of its board of directors that they would not have voted for the construction works complained of except for Schneider's assurance of responsibility for such damages as might result from the material changes which he proposed, and which were subsequently made, and his repeated assertion that he was taking all chances and that no person should be harmed thereby.   Counsel contend that the court erred in excluding this offer, but, in view of our decision, we do not find it necessary to pass on this ruling of the court.

We have examined defendant's material assignments of alleged error and we think they are well founded in fact and in law.   It appears to us that the judgment is not supported by the evidence.

In view of our conclusion it follows that the judgment must be, and it hereby is, reversed and the cause is remanded.

REVERSED.

Note—See (1) notes in 12 L. R. A. (n. s.) 461; 20 L. R. A. (n. s.) 876; 48 L. R. A. (n. s.) 667; 18 R. C. L. 682; 4 R. C. L. Supp. 1200; 5 R. C. L. Supp. 998.