WALLACE G. QUEST, APPELLANT, v. EAST OMAHA DRAINAGE DISTRICT, A CORPORATION, APPELLEE.

52 N. W. 2d 417

Filed March 21, 1952. No. 33087.

*William H. Thomas,* for appellant.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages, allegedly caused to plaintiff's real estate, by reason of an excavation made by defendant on its land adjoining that of the plaintiff. Issues were made and trial was had. At the close of all the evidence, on motion of defendant, the trial court discharged the jury and dismissed the action. Plaintiff appeals. We reverse the judgment of the trial court and remand the cause.

It was stipulated that the defendant was a corporation organized and existing under the provisions of Chapter 31, article 4, R. S. 1943. As such it had the power of eminent domain. § 31-415, R. S. 1943.

So far as is necessary for the requirements of this opinion, we summarize the evidence in accord with the rule that "A motion to dismiss or for directed verdict admits the truth of all material and relevant evidence adduced by the party against whom the motion is made, and such party is entitled to have such evidence considered in the light most favorable to him and to have the benefit of all inferences reasonably deducible therefrom in testing validity of the court's action in disposing of the motion." Weisenmiller v. Nestor, 153 Neb. 153, 43 N. W. 2d 568.

The two tracts of land involved are situated in an irregular tract in an area classed as the 5th Residence District in the City of Omaha. Defendant's land is (roughly) a triangular piece bounded by Twenty-fifth Street on the west, Sharon Drive on the north, and Pershing Drive on the northeast. Plaintiff's land is contiguous to defendant's land on the south and borders on Twenty-fifth Street.

Plaintiff purchased his land in August 1945. At that time it was and still is generally on the same level as

Twenty-fifth Street. To the north the land which defendant now owns was also of that same height for some distance and gradually sloped down to Sharon Drive. There were residences constructed along the west side of Twenty-fifth Street. The land to the north of plaintiff's, then a cornfield, was suitable for residence construction, facing Twenty-fifth Street to Sharon Drive. Pershing Drive, running northwest to southeast, is at a level appreciably lower than Twenty-fifth Street. Defendant's land had been excavated along Pershing Drive to the approximate level of the Drive and back for some distance into that land, leaving a cliff, as viewed from the Drive. The closest this cliff came to plaintiff's land was 50 feet at the northeast corner or to the north and rear of plaintiff's land. It then angled to the northwest and away from plaintiff's land.

Plaintiff's family consisted of himself, his wife, and three minor children. He began the construction of a house on his property in March 1946. He moved into the incompleted house in May 1946, and thereafter he and his family occupied it as a home, both before and after its completion as a modern home. His house was set back from Twenty-fifth Street and at its closest point was 28 feet from his north or common boundary line with defendant's property.

Defendant purchased its land for the specific purpose of excavating dirt therefrom for use on its levee. In September 1946 it began its excavation. Defendant allowed a strip of land 8 to 10 feet in width to remain undisturbed along its south line and its west line on Twenty-fifth Street. It cut a bank at a slope of one-quarter to one along that line and excavated the balance of its land to a grade below that of Sharon Drive and Pershing Drive. The result was that a cliff 40 feet high was made along the south side of its land contiguous to plaintiff's property and 38 feet from plaintiff's house, and a cliff from 40 down to 15 feet high at Sharon Drive along the west side of its property. In

so doing it destroyed the use of its property for residential purposes, so far as Twenty-fifth Street was concerned. It built a high wire fence on the boundary line around the property above the cliff on both the south and west sides of its property. Children could and did get under the fence and play on the land above the cliff with the resulting danger that the cliff presented. Fires were started in that area.

Dirt sloughed off from the face of the cliff and in times of high wind, dust blew up the cliff and into plaintiff's house, and dust and litter blew into his yard. Wind coming up the face of the cliff blew roofing and shingles from the north side of the house. It was necessary to double-insulate the north side of the house and expend extra amounts for heat because of it. The dust problem did not exist prior to the excavation work.

There was a railroad line some 500 or 600 feet east of these properties. When trains passed, the noise was excessive and the house and articles in it vibrated. These vibrations caused cracks in the walls and ceilings on the north side. Annoying noise and vibrations were not experienced prior to the excavation.

Pools of stagnant water were in the excavated area. Mosquitoes became quite bothersome in the summertime after the excavation, but were not experienced prior thereto.

Hundreds of cliff swallows nested in the cliff made by the excavation. They flew over the property of plaintiff with resultant noise and filth in the yard and on person and property. That condition was not a noticeable one prior to the excavation, although there were swallows in the cliff to the northeast prior to the excavation. These swallows and their nests were attractive to children and caused them to try to get to the nests and to shoot the birds.

The existence of the excavated area and the cliff, and the other matters resulting from it, have materially depreciated the market value of plaintiff's property and re-

stricted its use. Plaintiff's expert witness estimated the depreciation at $6,000. Defendant's expert witness estimated the adverse effect of the existence of the excavation and the cliff on the market price at $1,000 to $2,000.

Defendant offered evidence that controverted most, if not all, of these contentions. However, it is not material to a determination of the question here presented.

Plaintiff contends that it was error to refuse to submit the case to the jury. Plaintiff rests his contentions here upon either or both of two propositions: First, upon the constitutional provision that "The property of no person shall be taken or damaged for public use without just compensation therefor." Art. I, § 21, Constitution of Nebraska. Second, plaintiff contends that the use made of its property by the defendant constitutes a nuisance for which damages may be recovered.

Defendant here challenges those two contentions and advances a third which is that plaintiff failed to serve the notice provided for in section 31-451, R. S. 1943.

There is no contention here of negligence in defendant's acts. There is no contention of a removal of lateral support.

We have heretofore stated the rules of law that determine the questions here presented.

As above stated, defendant is a public corporation organized under the laws of this state and has the power of eminent domain. There is no question here that the excavation was made for a public use. Defendant pleads that this property was the only available property from which earth could be taken without substantially increasing the cost. In that connection we call attention to our statement that "Constitutional guarantees are of little avail unless carried out in the spirit in which they were framed, and no plea of public benefits should be permitted to impoverish the owner of private property, or override a plain constitutional inhibition." City of

Omaha v. Kramer, 25 Neb. 489, 41 N. W. 295, 13 Am. S. R. 504.

The following rules are stated in Snyder v. Platte Valley Public Power and Irrigation Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154:

The purchase of property by a public corporation, where it could have been acquired by the power of eminent domain, carries with it all the incidents of taking or damaging by eminent domain insofar as the question of damages by reason of the taking or damaging is concerned.

One of the incidents of taking property by eminent domain is that not only is the condemnor liable to compensate for the taking but also is liable, by virtue of Article I, section 21, of the Constitution of Nebraska, for consequential damage to other property in excess of the damage sustained by the public at large.

The words, "or damaged," in Article I, section 21, of the Constitution of Nebraska, include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property.

In a suit to recover damages under the constitutional provision for damage to property for public use, it is immaterial whether the petition states a cause of action ex delicto or ex contractu. If the fact is established that property has been damaged for public use, the owner is entitled to compensation.

Where land is not taken, the measure of damages is the difference in market value before and after the damaging, taking into consideration the uses to which the land was put and for which it was reasonably suitable.

" 'Whatever reduces the market value of real estate by the injuring of it for public use may be considered in determining the just compensation to which the property owner is entitled.' " Luchsinger v. Loup River Public Power Dist., 140 Neb. 179, 299 N. W. 549.

" 'The jury in fixing the damages sustained by a landowner in consequence of the appropriation, or injury, of his property for a public use may take into account every element of annoyance and disadvantage resulting from the improvement which would influence an intending purchaser's estimate of the market value of such property.' " Asche v. Loup River Public Power Dist., 136 Neb. 601, 287 N. W. 64.

In a case based on the constitutional provision, proof of negligence or the commission of a wrongful act is not necessary to a recovery. Wagner v. Loup River Public Power Dist., 150 Neb. 7, 33 N. W. 2d 300.

Tested by these rules it is patent that plaintiff, under the constitutional provision, was entitled to have the issue of his damages submitted to the jury for determination. The trial court erred in sustaining the motion of defendant. This makes a consideration of the nuisance theory unnecessary.

This brings us to the defendant's contention that plaintiff's action is barred because of failure to plead and prove the giving of the notice required by section 31-451, R. S. 1943. That statute is in part as follows: "No drainage district organized under the laws of Nebraska shall be liable for damages arising out of the construction or maintenance of any of the work of the said district unless actual notice in writing, describing fully the accident and the nature of the injury complained of, describing the defects causing the injury, and stating the time when and with particularity the place where the accident occurred, shall be proved to have been filed with the secretary of the board of directors of the district within thirty days after the occurrence of such accident or injury, except in cases involving minors or incompetents, or where the person injured is incapacitated to the extent that he is unable to give such notice or to employ an agent or attorney to do so in his behalf."

The transcript shows that on the opening day of the

trial plaintiff amended his petition, with court permission, and alleged that he had notified the defendant in writing of the damage to his property. There was evidence of letters that passed between the parties. We need not determine their sufficiency as to compliance with the statute.

Defendant relies upon Bartels v. Drainage District, 122 Neb. 340, 240 N. W. 434. That case was one based on negligent construction and maintenance.

Plaintiff relies upon Bridge v. City of Lincoln, 138 Neb. 461, 293 N. W. 375. There a similar claim involved a charter provision comparable to the statute here involved. That decision answers the defendant's contention here. Accordingly we hold that in an action for damages based upon Article I, section 21, of the Constitution of Nebraska and against a drainage district organized under the provisions of Chapter 31, article 4, R. S. 1943, for the damaging of private property for a public use, it is not necessary for plaintiff to plead or prove that he filed a notice as provided by section 31-451, R. S. 1943.

For the reasons given herein, the judgment of the trial court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED.