ALLEN L. McGREE, APPELLANT, V. STANTON-PILGER DRAINAGE DISTRICT, APPELLEE.

82 N. W. 2d 798

Filed May 3, 1957. No. 34168.

*Bernard A. Ptak,* for appellant.

*Thomas L. Grady,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiff brought this action against the Stanton-Pilger Drainage District for damages to his real estate caused by erosion of the banks of the Elkhorn River, and for other lands actually taken and not paid for by the district. The district filed a cross-petition asserting a mistake in the metes and bounds description of the right-of-way procured by condemnation proceedings and prayed that the description be corrected to conform to the lands actually taken. A jury was waived and a trial had to the court. The trial court found for the district on plaintiff's cause of action and for the district on its cross-petition. From the judgment rendered in accordance with these findings the plaintiff has appealed.

The plaintiff is the owner of the south 120 acres of the Northeast Quarter of Section 6, Township 23 North, Range 4 East of the 6th P. M., in Cuming County, Nebraska. The lands involved in this action lie within a large horseshoe bend of the Elkhorn River. The river

in this area is a very crooked stream and has frequently changed its channel at various places by erosion. The district, some time prior to May 27, 1950, determined to construct a pilot channel across the south end of plaintiff's lands and thereby straighten the course of the river. After failing in its attempts to negotiate a right-of-way across plaintiff's lands, it proceeded by condemnation to obtain one. It sought a right-of-way 200 feet in width in the center of which it proposed to construct a pilot channel 24 feet wide at the bottom and 34 feet wide across the top into which the river was to be diverted. The plat describing the land to be taken showed that the pilot channel would enter plaintiff's lands on the west. The center of the right-of-way was to be 790.5 feet north of the southwest corner of plaintiff's lands. The right-of-way was surveyed, staked, and flagged on the ground at the time of the appraisal and at the time of the trial in the district court in accordance with this figure. The record shows, however, that in describing the right-of-way by metes and bounds on the original plat and in the appraisers' award from which the appeal was taken, due to an evident transposition of figures the distance was shown as 709.5 feet instead of 790.5 feet.

It is clear from the record that the right-of-way was correctly marked out on the ground by stakes and flags when the appraisers viewed the premises and when the case was tried in the district court. The misdescription did not prejudice the rights of the plaintiff. The trial court was in all respects correct in reforming the description to conform to the plat and the survey made on the ground. See Holst v. Streitz, 16 Neb. 249, 20 N. W. 307. The contention of the plaintiff that he is entitled to be paid for land actually taken which was not within the right-of-way based on the distance of 709.5 feet from the southwest corner of plaintiff's land to the center of the right-of-way to the north where it entered plaintiff's lands is without merit. The trial

court found that the description contained in the appraisers' award in the condemnation case should be corrected and reformed to read as follows: A strip of land 200 feet wide across the south half of the northeast quarter of Section 6, Township 23 North, Range 4 East of the 6th P. M., in Cuming County, Nebraska. The center line of said strip of land is more particularly described as follows: Commencing at a point 790.5 feet north of the southwest corner of said quarter section as the point of beginning; thence south 73° 36′ east 487.9 feet; thence southeasterly 2,095.9 feet along a 14,324.9 feet radius curve concave northeasterly and tangent to the preceding course, to a point 192.9 feet north of the southeast corner of said quarter section as the point of ending.

The foregoing is the description of the right-of-way actually taken, and constituted the basis on which damages were assessed. The trial court correctly reformed the appraisers' description of the right-of-way to conform to the facts. No pleadings were filed in the district court in the original condemnation proceeding and no description of the right-of-way was set out in the district court judgment. This necessitates the correction of the error in the description contained in the appraisers' award to make it conform to the facts. The authority of the court to reform such an instrument is supported by Beall v. Martin, 48 Neb. 479, 67 N. W. 433; 31 Am. Jur., Judgments, § 639, p. 220; 49 C. J. S., Judgments, § 237, p. 449. The trial court correctly granted the prayer of the cross-petition.

It is clear that plaintiff was paid for all the land within the right-of-way described above. His claim for 5.493 acres of such land so taken, which was outside of a right-of-way based on the distance of 709.5 feet from the southeast corner of his lands to the center of the right-of-way at the point where it entered his lands, was properly denied by the trial court.

The plaintiff seeks to recover for lands taken by the

erosion of the river outside the boundaries of the right-of-way as he contended them to be, and some of which eroded land was outside of the right-of-way as we have found it to be. The district asserts that this was damage contemplated by and fully settled by the condemnation proceeding.

As we have heretofore stated, plaintiff's land lies in a bend of the river. Where the pilot channel was constructed there had been no previous river channel. The plaintiff refused to grant a right-of-way because he was familiar with the tendency of the river to erode and change its course, and he was fearful that it could or would not be contained within the 200-foot right-of-way. The president of the drainage district testified that this tendency of the Elkhorn River was well known and that it was not contemplated that the river would be contained within the banks of the pilot channel. It was contemplated, as he testified, that the river would erode and adjust its course as the full volume of the stream gradually assumed the new course charted by the pilot channel. It is for this reason that a right-of-way of 200 feet was sought and obtained. The pilot channel was 34 feet wide at the top with 83 feet of land on each side within the right-of-way. The river could therefore erode and change its course for 83 feet in either direction from the established banks of the pilot channel without injuring the lands of the plaintiff.

It is the contention of the plaintiff that when the river by erosive action changed its course and washed away his lands outside of the condemned right-of-way, it was a taking in excess of the land condemned and gives rise to an action for compensation under Article I, section 21, Constitution, providing: "The property of no person shall be taken or damaged for public use without 'just compensation therefor."

The record shows that plaintiff's lands were subject to erosion by the river solely because of the diversion of its natural course by the drainage district. It was

the drainage district which made the determination of the amount of plaintiff's lands to be taken. The plaintiff was in no position to insist that more was needed and should be paid for. It was contemplated that the pilot channel would adjust itself by the erosive action of the river. The river was to be the agent of the drainage district in converting the pilot channel into an adequate watercourse to carry the waters of the Elkhorn River. In performing this function it left the boundaries of the right-of-way and encroached upon plaintiff's lands. This is clearly an additional taking which gives rise to a cause of action for the land taken under Article I, section 21, of the Constitution. This holding is sustained by Compton v. Elkhorn Valley Drainage Dist., 120 Neb. 94, 231 N. W. 685.

The plaintiff contends further that the drainage district negligently constructed the pilot channel when it failed to dam the old river channel and force all of the water in the river into the new pilot channel. The record shows that the plans and specifications of the drainage district did not provide for such construction. The evidence shows that the drainage district only partially blocked the flow of water into the old channel of the river for the very purpose of permitting water to flow therein and fill the old channel by sedimentation. As the old channel filled up, more water was forced into the new pilot channel as the river adjusted its new course by erosive processes. The condemnation proceeding was therefore res judicata of all such damages. Such damages were properly recoverable in the condemnation proceeding and it is conclusively presumed that they were allowed by the verdict of the jury. The record does not sustain a finding that the pilot channel was negligently constructed.

The plaintiff alleges also that he has suffered damages because of a failure of the drainage district to maintain the new channel. We point out that the Legislature has provided two methods for the organization of drain-

age districts to cover a situation such as we have before us. One is an organization by a proceeding in the district court as provided by Chapter 31, article 3, R. R. S. 1943, which type districts will hereafter be referred to as article 3 districts. The other method of organization is by a petition of landowners to the proper county board as provided by Chapter 31, article 4, R. R. S. 1943, which type of districts will hereafter be referred to as article 4 districts. The defendant district is an article 4 district.

Many of the provisions of articles 3 and 4 are similar. The provisions of article 3, however, provide for the maintenance and repair of the project constructed, while the provisions of article 4 impose no such duty upon the district. Consequently, we find cases involving article 3 districts which compel maintenance and repair by the districts, or sustain judgments for damages for failure by the districts to do so. Among the cases so holding are the following: Richardson County v. Drainage Dist. No. 1, 113 Neb. 662, 204 N. W. 376; Mooney v. Drainage Dist., 126 Neb. 219, 252 N. W. 910; Mooney v. Drainage Dist., 134 Neb. 192, 278 N. W. 368; Ritter v. Drainage Dist. No. 1, 137 Neb. 866, 291 N. W. 718; Ritter v. Drainage Dist. No. 1, 148 Neb. 873, 29 N. W. 2d 782; County of Johnson v. Weber, 160 Neb. 432, 70 N. W. 2d 440.

In cases involving drainage districts organized under article 4, the district has been held liable for negligent construction of the improvement, but has not been held liable for failure to maintain and repair, except where the latter was provided for in the plans and specifications of the project. This is due to the fact that article 4 does not impose the duty of maintaining and repairing its works upon the drainage district. In Idlewild Farm Co. v. Elkhorn River Drainage Dist., 116 Neb. 300, 216 N. W. 817, we stated: "The general rule, as we deduce it from the authorities and from our statutes, is that where the law authorizes the diversion of a river, and where such diversion has been effected by a construction which is nonnegligent, the duty devolves upon the

owner of the abutting lands to maintain the river in its new course, and not upon the drainage district which did the work, unless the plans and specifications of the project specifically provide for such maintenance by said district." Other cases to this effect are: Bunting v. Oak Creek Drainage Dist., 99 Neb. 843, 157 N. W. 1028, L. R. A. 1918B 1004; Boschulte v. Elkhorn River Drainage Dist., 102 Neb. 451, 167 N. W. 730; Hopper v. Elkhorn Valley Drainage Dist., 108 Neb. 550, 188 N. W. 239; Compton v. Elkhorn Valley Drainage Dist., *supra*.

The latter case appears to be the last case decided by this court in which an article 4 drainage district was involved on similar issues. It also appears to be the first case in which Article I, section 21, of the Constitution, was given consideration and applied to an article 4 district. The effect of its holding is that liability attaches for a condition amounting to a second taking or damaging of the landowner's property. It superimposes Article I, section 21, of the Constitution, upon previously declared rules governing article 4 drainage districts and, we think, properly so. In an action for damages based upon Article I, section 21, of the Constitution, against a drainage district organized under the provisions of Chapter 31, article 4, R. R. S. 1943, for the taking of private property for a public use, it is not necessary for plaintiff to file the notice required by section 31-451, R. R. S. 1943. Quest v. East Omaha Drainage Dist., 155 Neb. 538, 52 N. W. 2d 417.

The trial court sustained objections to evidence tending to show damage to the remaining lands. The evidence shows that such damages to the lands not taken were issuable in the previous condemnation proceedings. Plaintiff may not again obtain a judgment for damages which were or should have been litigated in the condemnation proceeding. Gruntorad v. Hughes Bros., Inc., 161 Neb. 358, 73 N. W. 2d 700.

We arrive at the following conclusions: No duty is

imposed upon a drainage district organized under Chapter 31, article 4, R. R. S. 1943, to maintain its works. Such a drainage district is liable for maintenance and repair only when the plans and specifications of the project so provide. Such a drainage district may be held liable for negligence in the construction of its works. When the application for condemnation specifies the desired taking and use of the real estate being taken, all damages caused by such taking and use properly exercised will be included in the damages allowed in such proceedings and will bar any further claim for such damage. Where property in excess of that condemned is taken, an action lies for its value under Article I, section 21, of the Constitution.

The trial court erred in dismissing that part of plaintiff's petition praying for the reasonable value of the land taken outside of the right-of-way as condemned by the drainage district. Other causes of action were properly dismissed. The trial court properly sustained the prayer of defendant's cross-petition. The judgment of the district court is reversed and the cause remanded with directions to the trial court to determine the amount of land taken outside of the right-of-way condemned, to determine its value, and enter a judgment for the plaintiff for the amount thus found due.

REVERSED AND REMANDED WITH DIRECTIONS.