624

WILSON D. CHENEY, APPELLANT, V. COUNTY BOARD OF
SUPERVISORS OF BUFFALO COUNTY ET AL., APPELLEES.

FILED JULY 22, 1932. No. 28323.

*O. A. Drake* and *F. A. Nye*, for appellant.

*E. G. Reed, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY and
PAINE, JJ., and BEGLEY and BLACKLEDGE, District Judges.

EBERLY, J.

This is a taxpayer's action for an injunction restraining
the defendants in continuing the "resurfacing" of certain
improved public roads in Buffalo county with gravel, ex-
cept by first advertising and awarding contracts as pro-
vided by section 39-801, Comp. St. Supp. 1931. There
was a trial to the court upon pleadings and certain written
stipulations of facts, resulting in judgment for the de-
fendants. The plaintiff appeals.

There is thus no dispute as to the controlling facts. The
county of Buffalo owns and operates certain gravel pits,
from which gravel is supplied for use on its public roads.
It is under township organization, has a population of be-
tween twenty-four thousand and twenty-six thousand in-
habitants, has a highway commissioner vested with gen-

eral control, government, and supervision of all public roads and bridges under the authority and direction of the county board of supervisors, and was, and is, adequately supplied with articles of machinery and equipment needed to maintain and construct roads and highways as required by law.

Commencing in January, 1931, the highway commissioner of Buffalo county, without previously advertising for bids, or "letting contracts therefor to the lowest and best bidder" by the county board in the manner contemplated by section 39-801, Comp. St. Supp. 1931, for the purpose of "resurfacing," employed labor, men, teams and trucks to haul and convey gravel from the gravel pits, owned and maintained and operated by Buffalo county, to those portions of the public highways in this county described at length in plaintiff's petition, and the maintenance of which was properly chargeable to that county. Under the terms of their employment, the persons thus engaged thereafter worked from day to day, and week to week, subject to discharge without notice, and under the supervision and direction of the highway commissioner and the county board of supervisors. These employees were paid the compensation as was fixed by the county board of supervisors from time to time, the reasonableness of which is not in issue in this case as presented to this tribunal for determination. Immediately prior to the commencement of this litigation these workers received as compensation for their services a "certain sum per yard per mile." The individual claims of employees for services thus performed were presented to and allowed by the county board of Buffalo county at their usual meeting, ordinarily monthly. The services, so far as disclosed by the record, consisted wholly in hauling the county's gravel from the county's gravel pits and dumping the same on the county's roads where this gravel was to be used for the purpose of resurfacing the same. The cost of this transportation for the highways described in plaintiff's petition was many times in excess of $500.

The questions here presented are: Was the method outlined one which the county authorities of this county were justified in following? And were the expenditures entailed thereby such as they were empowered to make?

The determination of the proper scope of the powers vested in the subordinate divisions of the state, and the lawfulness of the exercise thereof by the statutory agencies concerned, necessitates recourse to the terms of the Constitution and the language of the statutes relating thereto.

A county is "a body politic and corporate" (Comp. St. 1929, sec. 26-101), whose powers "shall be exercised by a county board, to wit: In counties under township organization by the board of supervisors" (Comp. St. 1929, sec. 26-103), and which include "to make all contracts and to do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers" (Comp. St. 1929, sec. 26-104). Among the powers expressly conferred on county boards is the power "to manage the county funds and county business except as otherwise specifically provided," and "as a board, or as individuals, to perform such other duties as may from time to time be imposed by general law." Comp. St. 1929, sec. 26-105. So the county boards have "general supervision over the public roads of the county, with power to establish and maintain them" as provided by law, "and to see that the laws in relation to them are carried into effect." Comp. St. 1929, sec. 39-101. The duty of maintenance of county roads, including the duty of securing and purchasing and providing suitable and adequate graders and rollers and all other machinery, tools and appliances necessary for the efficient maintenance and repair of the county roads, is expressly imposed. Comp. St. 1929, secs. 39-230, 39-233. So, too, the county boards are expressly empowered and authorized to enter into contracts and use its machinery for the purpose of maintaining state highways. Comp. St. 1929, secs. 39-1404, 39-1408; *Saltzgaber v. Morrill County*, 111 Neb. 392. And in addition to this, it will be noted that when this court, in the case of *Lynn v. Kear-*

*ney County,* 121 Neb. 122, under the terms of the statute as then existing, held that "counties are without the power express or implied, to contract with townships, whereby, for an agreed consideration, the county will construct and maintain township roads," the succeeding legislature duly enacted chapter 80, Laws 1931, providing in part: "It shall be lawful in all counties under township organization, for such counties to make, alter, repair, and construct roads and /or highways for any township in said counties and to enter in and to execute written contract therefor." It is quite obvious that the terms of the legislation referred to and quoted above, so far as applicable to the subject of repair and maintenance of public highways, the history of the various enactments, as well as judicial pronouncements arising from failure of counties to properly exercise these powers, evidence the existence of a public policy to vest in these counties adequate and ample powers enabling prompt and necessary action to be taken in all matters of maintenance and repair of public highways, so far as essential to promote public interest, public safety and public security.

While conceding the lawful existence of power in the county authorities to "resurface" and gravel the highways involved in the instant case, plaintiff contends that the transactions set forth in his petition are embraced in, and controlled by, the provisions of section 39-801, Comp. St. Supp. 1931, providing in part: "The county board of each county has the power to repair or erect all bridges and approaches thereto and build all culverts and make improvements on roads the cost and expense of which shall in no instance exceed five hundred dollars. All contracts for the erection or reparation on bridges and approaches thereto, for the building of culverts and improvements on roads and for furnishing materials in connection with the same, the cost and expense of which shall exceed five hundred dollars, shall be let by the county board to the lowest and best bidder." Plaintiff also contends that as the total expenditures required in "resurfacing" the roads described

in his petition under the plan adopted by the defendant county board of supervisors are many times in excess of $500, and there being an absence of advertisement, bidding, and letting the contract to the lowest bidder, such plan contravenes the provisions of the statute quoted, and presents a case falling within the principles announced by this court in *People v. Commissioners of Buffalo County*, 4 Neb. 150; *Follmer v. Nuckolls County*, 6 Neb. 204; and *Merrick County v. Batty*, 10 Neb. 176. Further, plaintiff's position is that the case thus presented is one wherein injunction restraining the proposed acts of the corporate authorities is a taxpayer's right.

We do not agree with these contentions as applied to the facts before us. The statutory language is clear that, where the cost and expense involved "exceed five hundred dollars," contracts relating to the following subjects must be entered into by county boards in compliance with its terms, viz., contracts for (1) erection and reparation of bridges and approaches thereto; (2) for building of culverts; (3) making improvements on public roads; (4) for furnishing materials in connection with the same. It will be noted that the three authorities on which plaintiff relies, heretofore cited, are all concerned with the erection or reparation of bridges. But neither bridges nor approaches thereto are involved in the instant litigation. Nor are we concerned with either "culverts" or "improvements," as these terms are employed in this statute. And while in the section quoted from the word "repair" is found, and in the second sentence the word "reparation" appears, they are employed only in connection with bridges and the approaches thereto. There is nothing in the statutory language involved from which a legislative intent can be implied that "repair" and "reparation" are to be applied to terms other than bridges and the approaches thereto. This language suggests the application of the maxim *"Expressum facit cessare tacitum,"* and thus the force and effect of the words "repair" and "reparation" are necessarily limited to bridges and approaches thereto.

But the expenditures challenged and the services in dispute in the instant case were made and performed exclusively in "resurfacing" highways. "Resurface," as defined by the Century Dictionary is, "To put a new surface on; renew the surface of." To resurface, therefore, does not imply a new or additional construction, but the reverse. Ordinarily resurfacing occurs in highways when the original gravel surface, by reason of travel and the elements, has been in part worn, wasted, or destroyed by removal from, or being imbedded in, the highway. The original basic construction which constituted the highway "resurfaced" at all times remains; indeed, its continued existence is implied in the very use of the term "resurface." Nothing in the record before us tends to cast doubt on this conclusion. "Resurfacing" a gravel highway, in the absence of controverting evidence, is, in its essential nature, a repair, a term we have judicially defined, in relation to bridges in the road law, as "to restore to a sound or good state after decay, injury, dilapidation, or partial destruction." *Brown County v. Keya Paha County*, 88 Neb. 117; *Platte County v. Butler County*, 91 Neb. 132, 134.

But, as we have seen, the subjects of "repair" and "reparation," excepting as to bridges and approaches thereto, are not within the purview of section 39-801, Comp. St. Supp. 1931. Therefore, its restrictions are inapplicable to the present case. Maintenance of highways is by statute, in terms, a duty expressly enjoined on county boards. This business includes the caring for, repairing, guarding, and maintaining the grade, roadbed, bridges and culverts and other improvements which together constitute public roads. As to the elements thus enumerated, which in combination constitute and measure the duty of maintenance of highways imposed on county boards, in the absence of statutory restriction, county supervisors in due performance thereof are clothed not only with the powers expressly conferred, but they also possess such powers as are requisite to enable them to discharge the official duties thus devolved upon them by law. *Berryman v. Schalander*, 85 Neb. 281;

*Wherry v. Pawnee County,* 88 Neb. 503; *Lancaster County v. Green,* 54 Neb. 98; *Lindburg v. Bennett,* 117 Neb. 66, 77; *Emberson v. Adams County,* 93 Neb. 823; *Buffalo County v. Bowker,* 111 Neb. 762. The duty to repair by resurfacing highways being one expressly enjoined on county boards of supervisors, and they having by implication such powers as are necessary to enable them to perform the duties thus expressly enjoined upon them (*Christner v. Hayes County,* 79 Neb. 157), and there being in the instant case no violation of statutory restrictions in the exercise of these powers, it follows that the action of the district court in the present case was correct in the denial of the injunction prayed for, and its judgment is

AFFIRMED.