WILLIAM J. RITTER ET AL., APPELLEES, V. DRAINAGE DISTRICT NO. 1 ET AL., APPELLANTS AND CROSS-APPELLEES. CLARENCE L. MEYER ET AL., INTERVENERS, APPELLEES AND CROSS-APPELLANTS.

29 N. W. 2d 782

Filed November 28, 1947.   No. 32223.

*Otto H. Wellensiek* and *Moran & James*, for appellants.

*Tyler & Frerichs*, for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and THOMSEN, District Judge.

CHAPPELL, J.

Plaintiffs, who originally brought this action for themselves and all others similarly situated, were landowners within the limits of defendant drainage district, the regularity of whose incorporation under its charter in 1910, pursuant to the legislative act of 1905 and amendments thereto, had been theretofore confirmed by the district court and by this court. Drainage District v. Wilkins, 93 Neb. 567, 141 N. W. 151.

Benefit assessments levied upon plaintiffs' lands had been paid to the district, and they sought in equity to enjoin defendants, including the clerk of the district court of Otoe County, from holding an election to vote on dissolution of the district, pursuant to chapter 51, Laws of Nebraska, 1933, § 1, p. 268, now section 31-375, R. S. 1943.

Plaintiffs also sought a mandatory injunction ordering

defendant district and its supervisors, also defendants, to repair its drainage system, which, after final construction, had allegedly been permitted by the district to become out of repair, obstructed, inefficient, and defective for drainage purposes, and no longer protected their lands or crops from damages by water.

The trial court sustained special and general demurrers to plaintiffs' petition and the cause came to this court on appeal, where it was reversed and remanded for further proceedings. Ritter v. Drainage District, 137 Neb. 866, 291 N. W. 718.

In doing so, this court concluded that the 1933 legislative act would not be permitted, even if an attempt to do so were disclosed therein, to operate retrospectively and permit dissolution of defendant district, because to do so would invalidate or impair the obligation of contracts and interfere with vested rights.

Likewise, the court, relying upon Mooney v. Drainage District, 126 Neb. 219, 252 N. W. 910, and Mooney v. Drainage District, 134 Neb. 192, 278 N. W. 368 (certiorari denied, 305 U. S. 622, 83 L. Ed. 398, 59 S. Ct. 84), in construing section 31-463, Comp. St. 1929, as a part of defendant district's charter, also concluded that if at any time after final construction of the improvement, defendant's drainage system became out of repair, inefficient, or defective for any reason from any cause, it was the contractual as well as statutory duty of the district to improve and repair it within the limit of its power, so that it would serve the purposes for which it was constructed and the landowners would receive the benefits for which their lands were assessed.

After the cause was remanded and before trial on the merits, appellees Meyer herein, by permission of the trial court, filed a petition in intervention. Concededly, interveners were all landowners within the limits of defendant district and persons similarly situated with plaintiffs. Their lands in Sections 30 and 31, Township 7, Range 13, Otoe County, Nebraska, were

traversed from northwest to southeast by defendant district's drainage ditch, designated as the main channel of the Little Nemaha River, which eventually discharged its waters under a county highway bridge on the south side of Section 31.

In their petition, interveners alleged substantially that the original ditch had been permitted by defendants to become out of repair, obstructed, inefficient, and defective in that the dikes erected on both sides of the ditch had been washed away and damaged by erosion cutting down the banks of the ditch, obstructing it, and causing large new bends to be formed in the course of the channel, widening the ditch as it crossed interveners' lands, thereby destroying and engulfing several acres of their valuable farm crops and lands outside the original ditch right-of-way, and encroaching upon and threatening to engulf and destroy their valuable farm improvements.

It was also alleged in substance that such conditions had washed out and destroyed the west approach to the county highway bridge on the south side of Section 31, thereby impairing access to interveners' lands, increasing the distance therefrom to Talmage from 1¾ miles to 3¼ miles, and requiring them to drive four miles from their home on the east side of the ditch to cultivate their lands on the west side thereof.

The prayer was that defendant district and its supervisors be ordered to repair, reconstruct, straighten, and relocate the ditch, and restore the highway west of the bridge, and for equitable relief.

Defendant answered, and, among other things, denied any obligation to restore or maintain the approach to the county highway bridge, denied that the ditch was out of repair, obstructed, inefficient, or defective for drainage purposes, and alleged that its condition was caused by unusual flood waters which were not recurrent.

Interveners' reply, in the nature of a general denial,

made the issues complete, and the cause proceeded to trial thereon without objection. Evidence was adduced at length by the parties, and the trial court, having twice viewed the locus in quo, made specific findings of fact as well as conclusions of law, and entered its decree.

Many basic findings of fact were concededly correct. Among those were the validity of defendant district's incorporation, the official capacity of defendant supervisors, the respective ownership by interveners of described lands within the limits of the district, the payment of benefit assessments levied thereon, the origin and course of the ditch, designated as the main channel of the Little Nemaha River, in a southeasterly direction, ultimately crossing Sections 30 and 31, and discharging its waters on the south side of the latter section, where it had washed out the west approach to the bridge, and that the total benefits lawfully assessed against lands within the district for construction, maintenance, and repair of said ditch and works exceeded by $200,000 the total assessments theretofore levied and collected for all purposes, which sum was greatly in excess of the amount which would be required to repair the ditch and correct its alleged defects.

On the other hand, the legal justification for certain other findings of fact and conclusions of law, with adjudications based thereon, were questioned by both interveners and defendants. In that regard, the trial court found substantially that in certain described particulars, the drainage ditch, after construction, had been permitted by defendant district to become out of repair, obstructed, inefficient, and defective from a point directly opposite the mouth of a small lateral ditch on the east bank thereof, approximately midway of Section 31, south under the county highway bridge on the south side of said section, which condition had destroyed several acres of interveners' valuable farm lands, imperiled their farm improvements, and destroyed the west approach to the bridge. The court found that

north from the lateral above described, the ditch had become stabilized, and did not order defendants to make any repairs or to keep the ditch in repair from that point north in either Sections 30 or 31.

The decree in substance ordered and enjoined defendants to proceed without unnecessary delay to remove and eliminate a described convex point of land which had been permitted to protrude into the ditch on the west side thereof, opposite the mouth of the lateral above described, and remove all trees and obstructions below the west high bank of the ditch, and employ such other means, repairs, and constructions as might be necessary in conformity with good engineering practices to divert the flow of water in the ditch from its easterly bank and to maintain said ditch repairs and construction in such manner as to prevent cutting and erosion thereof.

The decree likewise ordered and enjoined defendants to construct a new straight ditch, approximately 1,100 feet in length from and on the west side of the existing ditch, northwest to southeast between two designated points, such ditch to be of sufficient depth and capacity as to prevent diversion of the flow of water through the old ditch and thereby prevent washing and erosion along the easterly bank thereof at the bend north and northwest of the farm improvements of interveners Meyer.

The decree also ordered and enjoined defendants to deepen and restore the channel of the ditch under the bridge on the south boundary line of Section 31, and construct such works and repairs in that portion of the ditch extending north from the bridge for approximately 550 feet as would be required to connect with and cause the flow of water therein to continue in approximately a straight line from the southern extremity of the above-described new 1,100-foot straight ditch to and through the channel under the bridge.

The decree further ordered and enjoined that defend-

ants should restore, rebuild, and maintain the approach to the bridge from the west end thereof to the west bank of the ditch in such manner as to accommodate and permit the maintenance of the public highway over and across the bridge.

Defendants' motion for new trial was overruled, and they appealed to this court. Interveners cross-appealed.

In defendants' brief, they assigned seven alleged errors of the trial court. However, assignments of error numbered 4 and 7 respectively were not discussed in the brief, and one other alleged error discussed in the brief was not assigned as error. We find that none of the latter were plain errors affecting the result. Therefore, in conformity with Rules, Supreme Court, 8a (4): "* * * consideration of the cause will be limited to errors assigned and discussed."

Defendants' assignments of error coming within the latter category were in substance that the trial court's decree was contrary to law and not sustained by the evidence. On the other hand, interveners' assignments of error upon their cross-appeal were in substance that the trial court erred in ordering only a limited amount of corrective work to be done west and south of the mouth of the lateral heretofore described, erred in finding that the ditch in Section 31 had become stabilized north of that point, erred in making no finding relative to the ditch in Section 30, and that the decree relative to the north half of Section 31 and in Section 30 was contrary to law and not sustained by the evidence. We conclude that the trial court's decree should be affirmed as modified herein.

With reference to defendant's duty, it should be stated at the outset that Ritter v. Drainage District, *supra,* is the law of the case and controlling here upon that question. In other words, it was clearly the mandatory duty of defendant district and its supervisors to keep the ditch in repair, and if, after final construction, it became out of repair, obstructed, inefficient, or defective for any

reason from any cause, its duty to improve and repair it within the limit of its power was mandatory and one which equity courts had the power and duty to enforce. See, also, both opinions of Mooney v. Drainage District, *supra*.

In Richardson County v. Drainage District, 113 Neb. 662, 204 N. W. 376, this court went so far as to conclude, in promulgating a rule applicable here, that the right and duty of the supervisors of a drainage district to keep its drainage system in repair was not limited to making good its defects in the precise place of its original construction, when the nature of the soil and the general topography did not admit of successful operation there, but included the right and duty to make the system effectively serve the purposes for which it was licensed to be constructed. See, also, both opinions of Mooney v. Drainage District, *supra*.

Since 1905, drainage districts organized by proceedings in the district court have been permitted to do so, for the purpose of having the lands embraced within the district "* * * reclaimed and protected from the effects of water, by drainage or otherwise." § 31-301, R. S. 1943. Those very purposes were incorporated in Article III of defendant district's charter by use of the following language: "* * * to protect and reclaim in so far and to the extent that said proposed improvements will do so the lands within the limits of said district as hereinafter described, and any lands which may at any time be legally brought within said district, from the overflow or flood waters of said streams, * * * and to maintain and protect said improvements."

Since 1905 the statute has specifically provided for the appointment of overseers for the purpose of preserving any ditch, drain, dike, or other works erected or constructed by drainage districts organized by proceedings in the district court, whose duty it should be to remove all obstructions from the drainage ditches,

drains, or watercourses, and keep such works in good repair. § 31-365, R. S. 1943.

The language "* * * out of repair, obstructed, inefficient, or defective from any cause," appearing in section 31-463, Comp. St. 1929, which was a part of defendant district's charter, manifestly included erosion, whether caused by unusual floodwaters or otherwise, as well as every other reason, element, or cause substantially impairing or destructive of the very purposes for which defendant district was organized and its works constructed. To hold otherwise in the case at bar and thereby sustain defendants' contentions would require landowners within the district to pay for an injury instead of a benefit, invalidate or impair the obligations of contract, interfere with vested rights, and take their property without just compensation. Ritter v. Drainage District, *supra*. Section 31-463, Comp. St. 1929, as amended by chapter 74, Laws of Nebraska, 1935, § 1, p. 258, effective May 27, 1935, which now appears as section 31-364, R. S. 1943, has no application in the case at bar.

The factual situation presented here is unusual in that the supervisors of defendant district have admittedly never appointed overseers as provided by statute, and have made no substantial effective effort whatever for more than a quarter of a century to perform their plain legal duty to keep in repair or repair the ditch involved. We call attention to the fact that a drainage district is a public corporation. The duties of its officials involve the protection of both public and private interests and their performance is imperative.

Above Sections 30 and 31 the ditch was constructed on a series of long straight lines for approximately 15 miles. However, the ditch traversing approximately the last mile over Sections 30 and 31 was not similarly constructed as originally planned, but ultimately consisted of alternate portions of the old bed of the Little Nemaha River and four connecting cut-offs, which still

left a series of bends in the river channel itself, at each of which the water coming down in volume from above Sections 30 and 31 was forced to change direction and impinge upon the concave porous soil banks of the ditch, causing the conditions hereinafter described.

The cut-offs as originally constructed were 16 to 18 feet deep, with a sub-channel 3 feet deep and 5 feet wide. The main ditch therein was 16 feet wide at the bottom, with bank slopes 1 foot horizontal to 1 foot vertical, making the ditch 48 feet wide at the top. Its waste banks, 20 feet on each side, were piled 15 feet back from the edge of the ditch, leaving 15-foot berms, making an overall width of 118 feet on a 132-foot right-of-way.

The record discloses that at the time of the trial, the drainage ditch had generally eroded and become obstructed and was continuing and would continue to erode and be obstructed, whether at floodtide or otherwise, at all points, but particularly at or near the several concave bends. The waste banks and berms had gradually disappeared. The ditch was then 175 feet wide at its narrowest point, and extended from that width up to approximately 200, 300, 400 and even 600 feet. At the south highway bridge on Section 31, the ditch was approximately 300 feet wide, leaving an unspanned, washed-out, open distance of 175 feet, between the west end of the bridge and the west bank of the channel. At the bend just north of the improvements of interveners Meyer in Section 31, which were then in imminent danger of engulfment therein, the ditch was approximately 600 feet wide. At that time, the ditch had encroached upon and engulfed 23½ acres of valuable farm lands, only 9 acres of which were in the original right-of-way.

The aerial photographs and others appearing in the record affirm the facts orally adduced as above set forth, and conclusively demonstrate that the ditch involved had, after construction, "become out of repair, ob-

structed, inefficient, or defective" not only in the south half of its length in Section 31, as found by the trial court, but also in a similar manner, although to a lesser degree, in the north half of its length in Section 31 and in Section 30, particularly at and between bends 1, 2, and 3, the apparent beginning of the present trouble. There is evidence that the east approach of the bridge on the north side of Section 31 between bends 1 and 2 is even now in danger of destruction. With reference to the ditch in the north half of Section 31 and in Section 30, the question was not whether the ditch was stabilized but whether or not it had been permitted to become out of repair, obstructed, inefficient, or defective from any cause. We find that it had.

We turn then to a brief discussion of the trial court's decree, which, after making specific findings, ordered and enjoined defendant district and its supervisors not only to repair the ditch, but ordered them to do so in conformity with a specific plan. The probable adequacy or efficiency thereof, or of the plan proposed by interveners' engineers we need not discuss.

In Mooney v. Drainage District, 126 Neb. 219, 252 N. W. 910, this court ordered the district to enlarge or increase the carrying capacity of the outlet of its drainage canal. In doing so, it was said: "The method of financing the proposition and the plan for accomplishing the improvement lie within the discretion of the district board. The district court did not, nor will this court, attempt to interfere with this discretion, but the district must act and its acts must be commensurate with its duty."

Under the circumstances of this case, the method and manner of performing and conforming with the district's lawful duty presents an engineering as distinguished from a judicial problem, which defendant district and its supervisors, with the advice of competent engineers must effectively solve and make efficiently effective without unnecessary delay, in order that the interveners

and other landowners within the district may receive the benefits for which their lands were assessed.

Bearing that in mind, we conclude that after finding that the drainage ditch was out of repair, obstructed, inefficient, and defective, and the manner thereof, the trial court should order and enjoin defendant district and its supervisors to act forthwith without unnecessary delay and perform their duty to improve and repair the ditch and keep and maintain it in repair, by the employment of such plans, manner, means, repairs, improvements, and construction as may be necessary in conformity with good engineering practices, to accomplish the result which the law requires as shall be provided in the trial court's decree in conformity with this opinion.

Since we have concluded that defendant district and its supervisors should be ordered to repair the ditch, remove obstructions therefrom, and put it in efficient and effective condition, the next step thereafter will naturally be the restoration of the bridge and approaches thereto over the county highway on the south side of Section 31 where the ditch does and must of necessity continue to cross the county highway. The remaining question presented then is upon whom does that duty rest?

Defendants contended that decision of that question was controlled by an agreement between the district and Otoe County executed on March 12, 1915, in conformity with section 1, chapter 172, Laws of Nebraska, 1913, p. 524, now section 39-805, R. S. 1943, which allegedly imposed the duty to maintain bridges and approaches over the highways within the district upon the county. On the other hand, interveners, although admitting execution of the agreement, contended that its provisions had no application to the bridge involved, and that it was the statutory duty of the district, having crossed or intersected the highway, to restore the bridge and its approaches.

Bearing in mind the above contentions, we have ex-

amined the agreement and conclude that it was inclusive only of bridges specifically designated therein, resulting from and necessitated by the original plans for construction of defendants' drainage system and such other bridges as might be required as the result of a change of plans for such original construction, rather than that it should apply to all other bridges required in the future by reason of an intersecting or crossing of the highway after defendants' drainage system had been constructed.

The bridge involved, inclusive of its approaches, belongs in the latter category, and, a fortiori, the duty to restore it is controlled by statute, and not by the agreement, as argued by defendants.

We are not concerned here with the ordinary duty of a county to construct and maintain bridges and approaches over its highways which have been impaired by natural causes or the county's statutory duty to maintain bridges and approaches after construction thereof by a drainage district over a county highway. The case at bar involves the statutory duty of a drainage district to restore a county highway to its former state as nearly as may be when intersected or crossed by its ditch, which here imposes a duty to restore the west approach to the county bridge, or, if necessary, to construct a new bridge or any necessary portion thereof, inclusive of approaches.

In that connection, chapter 161, Laws of Nebraska, 1905, § 23, p. 628, now respectively appears as sections 31-352 and 31-353, R. S. 1943.

Section 31-352, R. S. 1943, provides: "In order to effect the drainage of the district, the board is authorized to clean out and remove all obstructions from the bed of any stream, * * * or other watercourse in the district; to straighten or shorten and deepen or widen the course of any stream or to abandon the bed of any stream and construct a new channel therefor; and to fill up any channel, or part of a channel, of any stream,

* * * or other watercourse, in order to turn the direction of the volume of water, or to concentrate the water, so as to deepen and form a main channel."

The district and its supervisors are now required to again exercise that authority by reason of their own omission, fault, neglect, and failure to repair or keep the ditch in repair in conformity with their duty clearly enunciated by this court in this very case itself on April 12, 1940, some two years prior to destruction of the approach to the bridge and the ditch's change of course, intersecting and crossing the highway at another point to the west thereof.

By reason thereof, the ditch has not only already intersected and crossed the highway as effectively as if perfected by a dragline, but also must be said to be required to do so again by reason of the necessity of the district and its supervisors exercising the authority above conferred, and that hereinafter recited in conformity with their duty to improve and repair the ditch.

Section 31-353, R. S. 1943, as applicable here, provides: "The board shall have the power to construct the works across any * * * highway, * * * which the route of the ditches may intersect or cross, in such manner as to afford security for life and property, but the board shall restore the same, when so crossed or intersected, to its former state as nearly as may be, or in a manner not to impair its usefulness unnecessarily."

Upon every horn of the dilemma, the district and its supervisors are required to restore the bridge and its approaches in such manner as to accommodate and permit the maintenance of the public highway over and across the same.

Chapter 172, Laws of Nebraska, 1913, § 1, p. 524, to which reference was heretofore made, appeared as section 2983, Rev. St. 1913 and section 2734, Comp. St. 1922, until it was amended in particulars not important here by chapter 172, Laws of Nebraska, 1929, § 1, p. 586. It

thereafter appeared as section 39-821, Comp. St. 1929, now section 39-805, R. S. 1943.

Lest it be further argued by defendants that such section imposed the duty to restore the bridge and its approaches upon the county, we will briefly discuss its application in the light of our elimination of the contractual provisions thereof. Section 39-805, R. S. 1943, provides in part: "Whenever any public highway within this state shall cross or be crossed by any ditch or channel of any public drainage * * * district * * * it shall be the duty of the drainage * * * district to build the necessary bridges and approaches, (under the supervision of the county board) and restore the highway in question to its former state as nearly as may be as it was laid out prior to the construction of the ditch or channel in question, and it shall be the duty of the county * * * involved to maintain said bridges and approaches; * * *."

It will be noted that when a highway is crossed by a ditch such as the one involved, it becomes the duty of the district to restore the highway to its former state by building necessary bridges and approaches thereover under the supervision of the county board, after which it becomes the duty of the county to maintain the same. As a matter of fact, then, it will be observed that the duty of the county to maintain the bridge and approaches involved is not presented for decision in this case, since the drainage district has not yet constructed the same. Consequently, we conclude that the trial court should have ordered the defendant district and its supervisors, after the ditch has been efficiently improved and repaired, to proceed without unnecessary delay and restore and rebuild the approach to the bridge involved, or, if necessary, that they construct a new bridge or any necessary portion thereof, inclusive of the approaches thereto, over the highway, under the supervision of the county board.

For the reasons heretofore stated, the decree and judg-

ment of the trial court is hereby affirmed as modified, with directions to enter a decree in conformity with this opinion. Costs are taxed to defendant.

AFFIRMED AS MODIFIED.