COUNTY OF JOHNSON, NEBRASKA, ET AL., APPELLEES, V. OTTO R. WEBER, APPELLANT.

70 N. W. 2d 440

Filed May 20, 1955. No. 33693.

*Dwight Griffiths* and *Robert S. Finn,* for appellant.

*Raymond B. Morrissey, J. W. Weingarten,* and *W. P. Loomis,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

In this action plaintiff sought an injunction preventing the defendant from trespassing on a levee constructed by Drainage District No. 1 of Johnson County, from damaging the levee, and from interfering with plaintiffs or their agents in repairing, maintaining, and improving the levee. A decree was entered favorable to the plaintiffs. Defendant appeals.

We affirm the judgment of the trial court as modified.

The plaintiff County of Johnson will be hereinafter referred to as the County; the plaintiff Chicago, Burlington and Quincy Railroad Company will be hereinafter referred to as the Burlington; and Drainage District No.

1 of Johnson County will be hereinafter referred to as the District. The defendant will be referred to by such designation.

The parties here use the word levee and dike interchangeably as meaning the same thing. We do likewise.

As nearly as we can determine from this record, the District was organized under the provisions of Laws 1905, c. 161, p. 610 (which in turn became Comp. St. 1907, c. 89, art. IV), and as amended by Laws 1909, c. 147, p. 507. As amended, the act is now found generally in Chapter 31, article 3, R. R. S. 1943. The District's articles of association were filed in the district court on October 22, 1909 (see, Laws 1909, c. 147, § 1, p. 507; § 31-302, R. R. S. 1943), and decree was filed May 7, 1910, declaring the creation of the District. (See, Comp. St. 1907, § 6241; § 31-304, R. R. S. 1943.) By its articles of association it was provided that it should "continue in existence for a period of twenty (20) years." The acre area included in the District is not summarized in the evidence.

No further showing is made as to the District, its organization, or its functioning, save that it appears that a drainage ditch was constructed somewhat according to the plans of the engineers.

On June 17, 1913, the Burlington was assessed, and paid, $15,000 for benefits from the District. It appears that other lands, including those of the defendant, were assessed for benefits also.

On August 3, 1914, for a consideration of $200, Ind Weber (then the owner of the land involved in this action) and his wife, executed and delivered a "right of way deed" to the District. Reference will be made to the terms of that deed later herein. The ditch and dike involved here were built on the right-of-way there granted in 1915.

In 1929, the Legislature enacted Laws 1929, c. 130, § 1, p. 480 (now section 31-132, R. R. S. 1943), containing this language: "When any improvement shall have

been completed under the provisions of this article, or by any drainage district which shall have been dissolved, it shall be and remain under the direct control and supervision of the county board, and if at any time the same in their opinion requires repairing or the removal of obstructions in any part thereof, they shall cause the same to be done, and shall pay for the same out of the county ditch fund."

In 1930, the 20 years' "existence" provided in the articles of association of the District expired. The parties here submit this cause on the assumption that the District became dissolved at that time. Without determining that assumption, we accept it for the purposes of this opinion.

In 1935, defendant acquired the land involved by warranty deed from his father.

The profile elevation of the dike through defendant's land was originally planned and built at an elevation expressed as 489.5.

In 1942, there were severe floods in the area which caused water to run over the dike on defendant's land and damaged the dike materially.

On June 8, 1943, the County entered into a contract with the Burlington whereby the County granted the right to the Burlington to enter the strip of land involved in this action "for the purpose of restoring said dike and in the future if and when the Railroad deems necessary or advisable, for the purpose of maintaining said dike." The Burlington agreed "at its own cost and expense to restore said dike at this time and if and when it deems it necessary or advisable in the future, to maintain said dike."

Thereafter the Burlington, in 1943, entered and restored the damaged part, raising the elevation to 491.5, being an increase of 2 feet in elevation. Defendant testified that he ordered the work stopped at that time, but it is clear from the evidence of witnesses, including

the defendant, that the repairs were completed at that time.

In May 1950, there was another flood which went over the dike at its increased elevation, cut holes in it, and materially damaged it.

In November 1950, the Burlington put its employees upon the property with the intent of restoring the dike and increasing its elevation to a level of 493, or 3½ feet above the original grade line. It is undisputed that that elevation is necessary if the dike is to serve the purpose for which it was constructed. Defendant ordered the workmen off the property and succeeded in stopping the construction involved.

It appears that the vulnerable point in the dike is at the turn of the channel of the stream. In 1951, defendant had dirt removers enter the land and lower the dike at its vulnerable point from 2½ to 3 feet for a distance of 50 feet in direct line with the current of the stream. Defendant's purpose, as stated by him, was to let the water go through if it wished.

This litigation followed by petition initially filed in March 1952. Issues were finally made up in February 1954, trial was had, and decree was rendered in June 1954.

Defendant here submits several "principal questions" which he advises us are involved. He makes 40 assignments of error. Thereafter he pays no particular attention to the questions stated or the errors assigned. This leaves us to determine the questions argued.

This is an equity action for trial de novo here.

Defendant's first argument here is that the right-of-way deed of Ind Weber to the District created an easement in gross and not an easement appurtenant, and as such is not inheritable, assignable, or subject to succession. He contends that it was an easement, personal in nature, attached to the named grantee and became a nullity after the dissolution of the grantee District in 1930. He contends that these conclusions follow as a matter of

law and are reinforced by the terms of the instrument itself.

He contends basically that to be an easement appurtenant there must be a dominant estate to which the easement attaches and that the District does not have such a dominant estate.

This contention is without merit.

The District is a public, as distinguished from a private, corporation. The statute so declared. § 6241, Comp. St. 1907. We have so held. See Drainage Dist. No. 1 v. Suburban Irr. Dist., 139 Neb. 333, 297 N. W. 645.

We held also in the above decision that it was the intention of the Legislature in the enactment of Laws 1905, c. 161, § 1, p. 610, "to impose a duty on drainage districts organized thereunder to maintain and keep in repair the drainage systems constructed under the powers given them by such act, to the end that landowners whose land was assessed for the construction of such system on the basis of expected benefits from such construction may be protected in the enjoyment of such benefits."

We also held that the performance of the powers delegated to drainage districts by that act, "especially those pertaining and relating to the continuance of the corporate entity authorized thereby and the care and preservation of its drainage ditches and other works and improvements, involves the protection of public and private interests by a public corporation organized for that purpose, and that this legislation, in view of its inherent nature and purpose, must be construed as a statute mandatory."

By provisions of section 6250, Comp St. 1907 (now as amended section 31-321, R. R. S. 1943), the District is given the power to acquire easements for rights-of-way. This is a power conferred for the benefit of the lands within the District that are to be drained. Under these circumstances the easement owner is the dominant tenant. Sheppard v. City and County of Dallas Levee

Imp. Dist. (Tex. Civ. App.), 112 S. W. 2d 253.

The rule is: "Every contract is made with reference to, and subject to, existing law, and every law affecting such contract is read into and becomes a part of the same." McWilliams v. Griffin, 132 Neb. 753, 273 N. W. 209, 110 A. L. R. 1039. This rule has been repeatedly followed as late as Niklaus v. Miller, 159 Neb. 301, 66 N. W. 2d 824.

The statutes under which the District was organized are the authority under which the parties acted when the right-of-way deed was given. Whether referred to or not in the deed, the terms of the statute necessarily, in legal effect, were a part thereof and are to be considered in construing the deed.

We have held that: " 'A grant *in gross* is never presumed when it can fairly be construed as appurtenant to some other estate. * * * Whether an easement in a given case is appurtenant or in gross is to be determined mainly by the nature of the right and the intention of the parties creating it. * * * If it be in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the grantee as to its use, and there being nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant to the land, and not an easement in gross, * * *.' " Smith v. Garbe, 86 Neb. 91, 124 N. W. 921, 136 Am. S. R. 674. See, also, Neilson v. Leach, 140 Neb. 764, 1 N. W. 2d 822.

The right-of-way deed granted to the District an "easement" over the described parcel of land upon which to construct a levee with borrow pit; it is referred to in the deed as a "grant and conveyance" of a right-of-way reserving "the full use and possession of all the land in said right of way not actually occupied by the said drainage district, after the completion thereof, for all purposes not inconsistent with its use by the said drainage district in preserving and maintaining said

ditch in a proper state of efficiency for the purpose for which it was constructed."

The applicable statutory provisions gave the District the right to acquire easements "to construct and maintain" the contemplated works. Other provisions in the act will be referred to later herein.

We conclude that the right-of-way deed granted an easement appurtenant to the land.

But the defendant contends that if that be so, the easement expired at the end of the 20-year period covering the "existence" of the District. If that be so, the purpose to be served by the construction of a drainage system would be accomplished only for the period fixed in the articles of association and thereafter nature would take its course. It would be the duty of the District to maintain the system for the period fixed and thereafter both duties and rights disappear. The substantial investments of landowners in these projects would likewise "dissolve."

We find nothing in the act that would sustain such a conclusion of legislative intent.

Plaintiffs rely on the provision enacted in 1929, and now section 31-132, R. R. S. 1943, providing that: "When any improvement shall have been completed * * * by any drainage district which shall have been dissolved, such improvement shall be and remain under the direct control and supervision of the county board, and if at any time the same, in the opinion of the board, requires repairing * * * the board shall cause the same to be done, * * *."

Plaintiffs say that under the provisions of this act it is not only the right but the duty of the county to make the necessary repairs involved here.

Defendant contends that to apply the 1929 amendment here is to apply it retroactively, to rewrite the right-of-way deed, to insert covenants and grants not contained therein, and to deprive him of his property without compensation, impair the obligation of the con-

tract, and otherwise violate constitutional provisions both state and national. Defendant relies on the rule last stated in Ritter v. Drainage Dist., 137 Neb. 866, 291 N. W. 718, that: "A legislative act will not be permitted, even if an attempt so to do is disclosed, to operate retrospectively where it will have the effect to invalidate or impair the obligation of contracts or interfere with vested rights."

There is no retrospective, but rather a prospective, application of the statute here involved.

It is quite apparent that the Legislature was confronted with situations, such as this record discloses, where the purpose of drainage systems would be defeated or jeopardized because of the dissolution of the constructing and operating districts. The Legislature simply provided that when that situation happened, the improvement should thereafter be under the control and supervision of the county board and "Upon the dissolution of any drainage district the right-of-way interests of such drainage district shall pass to and become the property of the county where located * * *." Laws 1929, c. 130, § 1, p. 480.

This act singly provides that when a district, a public corporation, dissolves, its right-of-way interests and the control and supervision of the improvement pass to the county, a public corporation, to be exercised by the county board. That is what happened here.

We have held that: "Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state." Seward County Rural Fire Protection Dist. v. County of Seward, 156 Neb. 516, 56 N. W. 2d 700.

Restatement, Property, § 487, p. 3029, states the following rule: "Except as prevented by the terms of its

transfer, or by the manner or the terms of the creation of the easement appurtenant thereto, one who succeeds to the possession of a dominant tenement thereby succeeds to the privileges of use of the servient tenement authorized by the easement."

There is nothing in the terms of the transfer or of the creation of the easement that prevents the County succeeding to the privilege of the use of the servient tenement.

The County properly brings this action pursuant to its rights and to permit the performance of its duties within the scope of the legislative act.

Defendant contends that the County was not doing this work but that the Burlington had determined the necessity and was performing the work; that the contract under which it proposed to do the work was void because the statute requires the direct control and supervision of the County and the county board of the necessity of the repair of the dike; and that the contract between the County and the Burlington was an unauthorized delegation of power.

It is clear from the record that the workmen ordered from the property by the defendant were employees of the Burlington. It is also apparent that the Burlington determined the necessity of these repairs. However, the County by this action clearly accepted that determination, made it its own, and produced the evidence of the necessity.

The actions of the defendant precipitated this litigation. He here challenges not only the right of the Burlington but the right and duty of the County as well. He resists the rights of the County as well as the Burlington.

The plaintiffs allege that the contract was between the County and the Burlington, and that the Burlington attempted to repair the dike and was prevented by the defendant. They also allege that thereafter defendant

entered and cut the dike on the right-of-way. These allegations are established as true.

Plaintiffs also allege that because of the acts of the defendant, that plaintiffs and their agents are unable to repair and maintain the levee so that it will serve the purposes for which the ditch and dike were constructed. Those allegations are established as true. Plaintiffs pray for a decree enjoining the defendant from trespassing on the right-of-way, from damaging the dike, and from interfering with plaintiffs or their agents in repairing and maintaining the levee.

Defendant by answer alleges the invalidity of the contract between the Burlington and the County; that neither of the plaintiffs had succeeded to the rights granted the District by the right-of-way deed; and prays that each of them be enjoined from further trespass upon his land.

The basic issue is the right and duty of the County in this matter. That in no way turns on the validity of the contract between the County and the Burlington. We do not determine that question. Clearly, the County has the right to the injunction which it seeks. The Burlington is likewise entitled to injunctive relief, not as an agent of the County but as the owner of an estate within the District and shown to be directly affected by the failure to repair the dike (see Ritter v. Drainage Dist. No. 1, 148 Neb. 873, 29 N. W. 2d 782), for as we said in Mooney v. Drainage Dist., 126 Neb. 219, 252 N. W. 910, landowners having paid assessments for the construction and maintenance of the system on the basis of benefits have the right to be protected in the enjoyment of those benefits.

The next question argued here goes to the right to raise the elevation of the top of the levee from 489.5 to 493, an increase of 3½ feet. The evidence is that the original elevation as planned and built was at 489.5. That elevation was proven to be inadequate by the 1942 flood and was raised in 1943 to 491.5. That elevation

likewise was shown to be inadequate by the 1950 flood. It is now planned to raise it to 493.

It appears that defendant cut the dike to about the 489.5 elevation. The evidence is without dispute that that elevation would not serve the purpose for which the dike was constructed and that if constructed to an elevation of 493, it would do so.

The trial court restricted the construction of the dike to an elevation of "approximately" 489.5. The defendant contends that the use of the word approximately affords the foundation for future litigation to determine how much higher the levee can be raised within the decree. This record indicates that result might occur.

The defendant relies on the terms of the right-of-way deed to sustain his contention that the elevation cannot go above 489.5.

Plaintiffs contend that the elevation must be at 493 if the dike is to be maintained in a proper state of efficiency for the purposes for which it was constructed. The general figures 489.5 and 493 each represent a datum level. The difference is one in feet.

As heretofore pointed out, the right-of-way deed granted the right "to dig, excavate and construct a Levee with burrow (sic) pit of and according to the plans prepared" by the engineer and adopted by the District. The plans for the original construction fixed the elevation of the dike, at the point here involved, at 489.5. As nearly as can be determined from the evidence, it was built at that level.

The rule is that if the grant of an easement or reservation is specific in its terms, it is decisive of the limits of the easement. 28 C. J. S., Easements, § 75, p. 752; 17 Am. Jur., Easements, § 97, p. 995. Accordingly we hold that the limit of the height of the dike at the point here involved is 489.5.

The right-of-way deed granted "such temporary right of way or means of ingress and egrees (sic) over their other lands adjacent to the said right of way herein-

before granted as may be necessary and convenient for the transportation of materials, machinery, supplies, tools and fuel upon said right of way during the period of the construction of the ditch or new channel by its agents, employees and contractors." The trial court granted the plaintiffs that right applicable to the work here involved.

In the light of our construction of the act, we hold that the right to so use the premises is impliedly granted for the purposes involved here. To hold otherwise would be to limit, if not destroy, the right to repair and remedy defects, by possibly making the dike inaccessible for that purpose.

The trial court held that plaintiffs had the right to enter and to reconstruct and maintain the levee in the manner herein considered, including the exercise of the right of ingress and egress over defendant's adjoining lands, and enjoined the defendant from interfering with such compliance. The decree in that respect is affirmed.

The trial court further enjoined the defendant from interfering with plaintiffs in preserving, reconstructing, and maintaining said levee and from trespassing on or damaging said levee. Of course, the decree is applicable to the situation and acts here involved. The decree in that respect is affirmed.

With reference to the elevation of the reconstructed dike, the decree of the trial court is modified so as to require that the elevation of the dike be limited to the elevation described in the record as 489.5.

As so modified, the decree of the trial court is affirmed. All costs are taxed to the defendant.

AFFIRMED AS MODIFIED.